22IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cv-22617-SCOLA

ELDER  LUJAN

      Plaintiff,

v

SAMUEL DANZINGER, as Trustee of the IPI
LAND TRUST 2017-4; IPI LAND TRUST 2017-4;
MASTER HOMEOWNERS ASSOCIATIONS, INC.
a Florida corporation;
BRAD SCHANDLER; and
BROUGH CHADROW & LEVINE, P.A.
a Florida corporation.

      Defendants

_____/

## AMENDED RESPONSE TO MOTION TO CONSOLIDATE

Defendants, BRAD SCHANDLER ("**Defendant**") SAMUEL DANZINGER

as Trustee of the IPI LAND TRUST 2017-4 ("**Danzinger**") and IPI LAND TRUST

2017-4 ("**Trust**")  file this response to the motion entitled, "PLAINTIFF'S

COMBINED MOTION TO RE-ACTIVATE AND TO CONSOLIDATE ACTIONS

WITH ARGUMENT & POINTS OF AUTHORITY" ("**Motion**") filed by ELDER

LUJAN ("**Plaintiff**") requesting that this court consolidate this abated action with a

recently filed matter styled as "AVENTURA ISLES MASTER  HOMEOWNERS

ASSOCIATION, INC. Plaintiff, versus ELDER LUJAN AND UNKNOWN SPOUSE

OF ELDER LUJAN – Case 19-CV-24494 COOKE" ("**Attempted Removal Action**")

and assert that many procedural and other defects compel denial of the Motion.

### Background of State Foreclosure Action

On November 11, 2016, Aventura  Isles Master Homeowners Association Inc.

("**Association**") filed a foreclosure action against Plaintiff.  That foreclosure action

was assigned case number 16-019170-CC-23 ("**Foreclosure Lawsuit**")

On July 12, 2017, a notice was prepared and filed to have the sale of the

property in August 4, 2017. On July 31, 2017, Association filed a motion to cancel

the sale. On July 31, 2017, counsel was substituted and the Trust became the

operative plaintiff to the Foreclosure Lawsuit.  Ultimately, an amended final

judgment was entered on August 31, 2017 and recorded O.R. Book 30680 at page

1904 of the Public records of Miami -Dade County Florida.

The sale was set for October 20, 2017. Prior to the sale, Proof of Publication

was filed on October 3, 2017. A Certificate of Sale was issued on October 20, 2017.

A Certificate of Disbursement was filed on November 7, 2017. A Certificate of Title

was issued on November 7, 2017 and recorded in O.R. Book 30753 at page 2932 of

the Public records of Miami-Dade County, Florida and, a Writ of Possession was

issued on November 9, 2017.  The title was amended on March 16, 2018 to be in the

name of Trust.

After all of the above-described events occurred in the Foreclosure Lawsuit, Plaintiff became engaged in the Foreclosure Lawsuit.  Plaintiff filed a June 26, 2018 Motion to Vacate Judgment. ("**Vacate Motion**")

The Vacate Motion culminated with the foreclosure sale being avoided, the title returning to Plaintiff, and the premises are now under the control of Plaintiff.[1] At present, Plaintiff has not fully paid the underlying dues which precipitated the Foreclosure Lawsuit. The debt grows as Trust has forwarded payments for taxes, insurance and more.

An Amended Complaint was filed by Trust which was served on Plaintiff.  No answer has been filed.

### Background of Attempted Removal Action

A "Notice of Removal" ("**Notice**") was filed by Plaintiff on October 30, 2019 asserting jurisdiction under 28 U.S.C. §§ 1332, 1441 and 1446. The Notice created the Attempted Removal Action.  In paragraph 4 of the Notice, Plaintiff specifically claims diversity grants him jurisdiction as follows:

4. Defendant removes this action pursuant to Chapter 28 U.S.C.

---

[1] Awkwardly, the motions to vacate the Certificate of Sale and return title had to be filed by Trust as Lujan would not file similar papers to return title to the real property to his name.

§1332(a)(2) (Diversity of Citizenship) as this suit is between a citizen of the Republic of Peru, where he is domiciled, and Plaintiff, which is a Florida corporation with its principal place of business operations headquartered in Miami, Florida. Moreover, the instant case or controversy involves a claim for damages that exceeds the amount of $75,000.00, exclusive of attorney's fees, interest and costs.

The underlying amended complaint of the Foreclosure Lawsuit is in Miami-Dade County Court, requesting far less than $75,000.00 exclusive of attorneys' fees and costs. Trust filed a Motion to Remand ("**Remand Motion**") in the Attempted Removal Action, a copy of which is attached hereto as **Exhibit "A."**

## Background of This Action

This lawsuit reviewed the *Younger* and the *Colorado River* doctrines for abstention and ultimately abstained because "[T]he state court foreclosure proceeding has not concluded. Therefore, abstention continues to be warranted under the *Colorado River* doctrine." ("**Abatement Order**") [DE 48] The Abatement Order is final, has not been subjected to rehearing, and has not been appealed as an interlocutory ruling. Full reasoning for abstaining was outlined by this court in the order entitled, "Omnibus Order on Motions to Dismiss" ("**Omnibus Order**") [DE 35] which dismissed Counts I and II of the complaint and stayed Counts III-VI ". . . pending final determination of the State Case (Case No: 16-019170 CC (23)(03), Miami-Dade County Court)." [Omnibus Order, page 8]

### Outline of Argument

The Alleged Removal Action is not an "action", as such term is used in Rule 42(a)(2), Fed.R.Civ.P. and the request to consolidate the Alleged Removal Action into this matter appears to be a bad faith attempt to avoid the court's directive in the Abatement Order.

### ARGUMENT

### Need Two Actions to Consolidate

The procedural rule specifically states, "If action**s** before the court involve a common question of law . . ." (emphasis added to show plural) Rule 42(a)(2). Defendant, Danzinger and Trust assert that the Attempted Removal Action will very likely be remanded for all of the reasons shown in the Remand Motion which is attached as Exhibit "A." If the Attempted Removal Action is remanded, the Motion would become moot and should be summarily denied.

The likelihood that the Abated Federal Action will be remanded is supported by the following facts:

(A)    The removal was requested beyond the one-year limitations period;

(B)    The underlying action is not for more than $75,000.00; and

(C)    The underlying action was litigated extensively before the request for removal was made.

Because it is very possible that there shall not be a related action which would

pertain to the statutory language of Rule 42(a)(2), Fed.R.Civ.P., this matter should not

be reviewed until the Remand Motion is ruled upon.

### Substantive Failures
#### NOT SAME PARTIES

The Attempted Removal Action and this action do not have identical parties

as shown by the box below.

| Parties in Attempted Removal Action | Parties herein |
|---|---|
| Elder  Lujan<br>Master Homeowners Associations, Inc.<br>A Florida Corporation | Elder  Lujan<br>Master Homeowners Associations, Inc.<br>A Florida Corporation<br><br>Brad Schandler<br><br>IPI Land Trust 2017-4<br><br>Samuel Danzinger, as Trustee of the IPI Land Trust 2017-4<br><br>Brough Chadrow & Levine, P.a. |

#### NOT SAME ISSUES

The issues ("questions of law" as recited in Rule 42) are not the same as shown

by the box below.

| Issues in Attempted Removal Action | Issues herein |
|---|---|
| Foreclosure for an amount of less than $15,000.00 | Quiet Title<br>Cancel Certificate of Title<br>Conversion<br>Constructive Fraud<br>Aiding and Abetting a Constructive Fraud<br>Civil Conspiracy |

### RIGHT TO JURY NOT IDENTICAL

The different issues further curtail consolidation because the Attempted Removal Action does not afford a jury trial right while the underlying lawsuit herein requests jury trial.

### NOT SAME FACTS

The "questions of fact," as recited in Rule 42, are not the same as shown by the box below

| Facts in Attempted Removal Action | Facts herein |
|---|---|
| Nonpayment of HOA fees to precipitate foreclosure | Conversion<br>Constructive Fraud<br>Aiding and Abetting a Constructive Fraud<br>Civil Conspiracy |

### Policy Dissuades Removal
### REQUEST UNDERMINES ABSTENTION

This matter was sent to the state court and the parties were ordered to finish in

the state court before returning to this forum. Plaintiff's filing of the Notice is an apparent attempt to return before completing matters in the state court. Such attempt to revive jurisdiction in this court is wrong. The procedural gamesmanship counters the final and nonappealable directive to abstain. Consolidation cannot be used as a "back door" to re-enter this court's jurisdiction.

## Conclusion

WHEREFORE, Defendant and Trust respectively respond to the Notice and state:

a.     The Motion is premature as the Attempted Removal Action may be remanded if the Remand Motion is ruled upon in Defendant's favor;

b.     The Attempted Removal Action, coupled with the Motion, are not in good faith as the resulting effect is an attempt to undermine the finality of the abstention outlined in the Abatement Order; or alternatively

c.     The Motion should be denied because the issues are not identical;

d.     The Motion should be denied because the facts are not identical;

e.     The Motion should be denied because the parties are not identical; or

f.     The Motion should be denied because the jury trial rights are not identical.

**ROBERT C. MEYER, P.A.**
2223 Coral Way
Miami, FL 33145
305/285.8838 Telephone
305/285-8919 Facsimile

/s/ *Robert C. Meyer*
Robert C. Meyer, Esquire
Florida Bar No. 436062

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by CM/ECF to all parties listed below on November 13, 2019

/s/ *Robert C. Meyer*
Robert C. Meyer, Esquire

**Parties Served**

James Gerald Jean-Francois, jjonlaw@hotmail.com, jamesjeanfrancoisesq@hotmail.com

James Knight Parker , Jr   jparker@boydlawgroup.com, mbeldock@boydlawgroup.com, mwiggins@boydlawgroup.com, nauderer@boydlawgroup.com, nkhani@boydlawgroup.com, servicemia@boydlawgroup.com

Thomas Allen Conrad   thomas.conrad@cna.com, santa.delmas@cna.com, thelawofficeofflorrainelester@cna.com
Y:\Clients\12834\0006  Lujan  v  Schandler  22617\R'M'Consol  1A.wpd

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.; 19-CV-24494 COOKE

AVENTURA ISLES MASTER  HOMEOWNERS
ASSOCIATION, INC.
              Plaintiff,
-------------------------------------------------------/
v

ELDER LUJAN AND UNKNOWN SPOUSE
OF ELDER LUJAN
              Defendants
-------------------------------------------------------/

**PLAINTIFF'S MOTION FOR REMAND
AND REQUEST FOR ATTORNEY'S FEES**

COMES NOW, AVENTURA ISLES MASTER HOMEOWNERS ASSOCIATION, INC'S

ASSIGNEE ("**Movant**"), which files this Motion for Remand under 28 U.S.C. § 1447(c) and

states:

1.      The Notice of Removal ("**Notice**"), as represented by defendant ELDER LUJAN

("**Lujan**"), was brought under 28 U.S.C. §§1441, 1446 and 1332.

2.      The notice is defective under numerous constraints posed by the federal statutes

referenced above and is deemed inappropriate based upon pre-existing actions taken by

Lujan. All will be outlined and explained below.

**UNCONTESTED FACTS**

3.      The state court action was filed **November 11, 2016** –  nearly three years prior to the

filing of the Notice.

<span style="color:red">Exhibit "A"</span>

CASE NO.; 19-CV-24494 COOKE
Page 2

4.      The state court action is a simple association's foreclosure action seeking damages for less than $15,000.00.

5.      The underlying state court action does not include any counterclaim.

6.      The state court action has been substantially litigated. Numerous pleadings were filed by Lujan which delayed adjudication of the simple foreclosure lawsuit.  That litigation has lasted for over 15 months.

7.      In addition to the underlying state court action, and prior to the Notice, Lujan filed a separate lawsuit in federal court to which the court abstained, for the time being, jurisdiction until the underlying state court action was completed.

8.      This is the second action delivered by Lujan to a federal court derived from a Florida County Court foreclosure action originally seeking damages for less than $5,000.00.

## FEDERAL COURTS DISFAVOR REMOVAL

9.       "[R]emoval statutes are construed narrowly." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1094 (11th Cir. 1994). This is partly because federal courts have limited jurisdiction and removal deprives plaintiffs of their chosen forum.

10.      Because removal is disfavored, federal courts subscribe to remand. "[W]e strictly construe removal statutes, resolving all doubts in favor of remand." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (citing S*hamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941))

## BURDEN IS ON LUJAN TO ESTABLISH JURISDICTION

CASE NO.; 19-CV-24494 COOKE

Page 3

11.     A removing defendant bears the burden of proof of establishing federal court jurisdiction, and its compliance with removal procedures. 16 Moore's Federal Practice § 107.11(3), 107.14(2)(g)(ii) (3rd ed. 2003) (Moore).

**DEFECTS IN THE REMOVAL REQUEST**

**I. ORIGINAL AMOUNT IN CONTROVERSY IS NOT $75,000.00**

12.     The original lawsuit existing between Movant and Lujan was filed in Miami Dade County court.

13.     To evidence the Court and the amount in controversy, a copy of the docket is attached hereto as **Exhibit "A."**

14.     Under Florida law, Chapter 34 of the Florida Statutes, actions brought in the county court must be for less than $15,000.[1]

15.     By this fact alone, federal diversity of citizenship jurisdiction cannot exist as the amount in controversy does not meet the statutory requirement of $75,000.00.[2]

---

[1] **34.01 Jurisdiction of county court.—**
(1) County courts shall have original jurisdiction:
        . . . .
(c) Of all actions at law, except those within the exclusive jurisdiction of the circuit courts, in which the matter in controversy does not exceed, exclusive of interest, costs, and attorney fees:
        1. If filed on or before December 31, 2019, the sum of $15,000.

[2] **28 U.S.C. § 1332. Diversity of citizenship; amount in controversy; costs**
        (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
                (1) citizens of different States;

CASE NO.; 19-CV-24494 COOKE
Page 4

## II. NOT ALL PARTIES ARE DIVERSE? UNKNOWN

16.    One of the defendants to the original lawsuit is the unknown spouse of Lujan.

17.    The citizenship of the unknown spouse is not known by Movant and has not ben made known by Lujan.

18.    If the unknown spouse of Lujan is a citizen of the United States, this case may not proceed as full diversity does not exist between defendants and plaintiff.

19.    "Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 84, 126 S. Ct. 606, 610 (2005)  "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant. *Tapscott v. MS Dealer Service Corp*., 77 F.3d 1353 (11th Cir. 1996)." *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998)  Federal jurisdiction pursuant to 28 U.S.C. § 1332 exists only when there is complete diversity between the plaintiffs and the defendants and the amount in controversy requirement is met. See *Owen Equip. and Recreation Co. v. Kroger*, 437 U.S. 365, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978)

20.    Lujan, when requesting removal to this federal court,  has a duty to clarify this point for the record. Lujan failed to do so. "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007)

CASE NO.; 19-CV-24494 COOKE
Page 5

21.    Because of such failure, this case should not be removed as complete diversity between the parties is unknown.

## III. REMOVAL NOT MADE WITHIN ONE YEAR

22.    Unlike other removal concepts, when the removal is based upon diversity, it must be done within one year. See 28 U.S.C. § 1446(c)(1).

23.    Section 1446(c)(1) states, "A case may not be removed . . . on the basis of [diversity] jurisdiction conferred . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."

24.    A simple review of Exhibit "A" – the docket of the underlying County Court foreclosure lawsuit – shows that the Florida County Court foreclosure lawsuit has existed for a period of nearly three  years prior to this court's receipt of the Notice.

## IV. REMOVAL BARRED AFTER SIGNIFICANT LITIGATION

25.    Moreover, Lujan  had ample opportunity to remove the Florida County Court foreclosure lawsuit; but, Lujan  chose instead to engage in "delaying" litigation in that court and did not file the Notice until October of 2019. Lujan engaged in the following events in the Florida County Court foreclosure lawsui prior to the Noticet:

| DATE | EVENT |
|---|---|
| June 26, 2018 | Motion to Vacate Final Judgment filed by Lujan |
| June 26, 2018 | Notice of Appearance by Counsel for Lujan |
| October 3, 3018 | Notice to Supplement Authority filed by Lujan |

CASE NO.; 19-CV-24494 COOKE

Page 6

| October 5, 2018 | Amended Notice to Supplement Authority filed by Lujan |
| October r 8, 2018 | Motion to Quash filed by Lujan |
| October 9, 2018 | Motion to Quash filed by Lujan |
| November 28, 2018 | Hearings for the following: (a) October 9, 2018 Motion to Quash; (b) October 19, 2018 Motion to Compel Responses to Discovery propounded on October 5, 2018; (c) Hearing on Subject Matter Jurisdiction; (d) November 9, 2018 Motion to Establish Priority of Hearings |
| November 28, 2018 | Motion to Compel denied without prejudice (can be refiled after Motion to Quash is ruled upon) and Motion to Quash reset for December 17, 2018. |
| December 17, 2018 | Hearing held on Motion to Quash and Motion that Court Lacked Jurisdiction<br><br>Order withheld pending review of documents and pleadings |
| Dec. 18, 2018 | Additional Memorandum submitted by Lujan |
| Dec. 20, 2018 | Additional Memorandum submitted by Foreclosing Party |
| Jan 11, 2019 | Order to Quash entered in state proceedings |
| Jan. 29, 2019 | Motion for Rehearing on Order to Quash |
| May 23, 2019 | Order denying Motion for Rehearing |
| June 6, 2019 | Motion to Vacate Judgment filed by State Plaintiff |
| Sep. 18, 2019 | Order Granting Motion to Vacate Final Judgment of Foreclosure and Vacating Amended Certificate of Title |

26.     The Florida County Court foreclosure lawsuit has been aggressively litigated by Lujan over a significant period of time.

27.     "[T]he legislative history of the statute reveals that the specific purpose of the statute is to disallow removal after significant action in state court." *Rauch v. Rauch*, 446 F. Supp.

CASE NO.; 19-CV-24494 COOKE
Page 7

2d 432, 435-436 (D.S.C. 2006)

28.     The above-recited events in the state court evidence how the delivery of the Notice should be disallowed as it arrived "after significant action in state court."

## V. NO PLEADING ABOUT EXCEPTION to ONE-YEAR RULE

29.     If the removal is requested beyond one year, it is the duty of the party seeking removal to prove that there has been bad faith by the plaintiff which has prohibited or deterred defendant from removing the case at an earlier time.

30.     No exception to the one-year rule has been pled by Lujan.

31.     Movant adds that no exception will exist. For this reason, removal cannot be allowed as it violates the one-year rule referenced above.

## VI. INEQUITABLE HANDLING WITH EARLIER PLEADINGS

32.     Prior to the filing of the Notice, Lujan has filed numerous pleadings in another federal court seeking damages. See **Exhibit "B."**

33.     Motions to dismiss were filed by the Movant and the federal court entered two orders which remanded the case to the state forum to allow the parties to litigate issues derivative from the original Florida County Court foreclosure action. See Composite **Exhibit "C."**

34.     Effectively, Lujan has made a simple Florida County Court foreclosure action – concerning what was originally less than a $5,000.00 Claim of Lien – into a federal case on two occasions  This is the second occasion that the Florida County Court foreclosure action is wrongly delivered to the federal forum. This latest delivery to the federal court: (a)

CASE NO.; 19-CV-24494 COOKE
Page 8

violates the one-year rule of section 1446(c)(1); (2) cannot and does not assert an exception

to the one-year rule of section 1446(c)(1); (3) violates § 1332(a) as the amount in

controversy is far less than the mandatory $75,000 minimum; and (4) is deemed to be

delivered in bad faith to create delay and frustration upon Movant to complete its state court

foreclosure action.

### Fee Rights

35.    This remand is being requested with 30 days of the Notice and fees are thereby

permitted under 28 U.S.C. § 1447(c) which reads:

> (c) A motion to remand the case on the basis of any defect other than lack of
> subject matter jurisdiction must be made within 30 days after the filing of the
> notice of removal under section 1446(a). If at any time before final judgment
> it appears that the district court lacks subject matter jurisdiction, the case shall
> be remanded. **An order remanding the case may require payment of just
> costs and any actual expenses, including attorney fees, incurred as a result
> of the removal**. A certified copy of the order of remand shall be mailed by the
> clerk to the clerk of the State court. The State court may thereupon proceed
> with such case. (emphasis added)

36.    Unlike Rule 11, "good faith" is not a defense to a request for fees under 28 U.S.C. §

1447. The entitlement to fees is a discretionary determination made by the court.

37.    In addition, Movant, under Chapter 720, Fla. Stat. as well as the governing documents

of the Aventura Isles Master Homeowners Association recorded in the public records of

Miami-Dade County, Florida, seeks fees and costs against Lujan for having to file this

pleading in this court.

        WHEREFORE, Plaintiff respectfully requests that the Court remand this matter to the

CASE NO.; 19-CV-24494 COOKE

Page 9

state court as permitted by federal statute and enter any other award which it deems to be just

and equitable, including an award of fees and costs to Movant.

**ROBERT C. MEYER, P.A.**
2223 Coral Way
Miami, FL 33145
305/285.8838 Telephone
305/285-8919 Facsimile

/s/ *Robert C. Meyer*
Robert C. Meyer, Esquire
Florida Bar No. 436062

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by CM/ECF to all parties listed below on November 4, 2019

/s/ *Robert C. Meyer*
Robert C. Meyer, Esquire

**Parties Served**
James Gerald Jean-Francois, jjonlaw@hotmail.com,
jamesjeanfrancoisesq@hotmail.com

Y:\Clients\12834\0008 - Removal 24494\Answer
MKD by BS 3.wpd

# Exhibit "A"

Clerk's Home (http://www.miami-dadeclerk.com/home.asp)  | Online Services (http://www.miami-dadeclerk.com/online_services.asp)  |
About Us (http://www.miami-dadeclerk.com/about.asp)  | Contact Us (http://www.miami-dadeclerk.com/contact.asp)  |
My Account (https://www2.miami-dadeclerk.com/PremierServices/login.aspx)



# Miami-Dade County Civil, Family and Probate Courts Online System

◀◀ Back to Search

> **Not all search results will be displayed on-line. For example, the following case types (Sealed, Juvenile, Adoption and Mental Health Cases) may or may not be in existence and may or may not be viewable by the public pursuant to Florida Supreme Court Mandate and the corresponding** Access Security Matrix. (https://www.floridasupremecourt.org/content/download/241418/2133339/AOSC18-16.pdf)

---

### AVENTURA ISLES MASTER HOMEOWNERS ASSN INC VS EDLER LUJAN

**Local Case Number:** 2016-019170-CC-23

**Filing Date:** 11/11/2016

**State Case Number:** 132016CC019170000023

**Case Type:** Other Civil Complaint (Non-Monetary)

**Consolidated Case No.:** N/A

**Judicial Section:** ND03

**Case Status:** CLOSED

---

👥 **Parties**                                                          **Number of Parties: 2** ▬

☐ Export to ▾

| Party Description | Party Name | Attorney Information | Other Attorney(s) |
|---|---|---|---|
| Plaintiff | Aventura Isles Master Homeowners Assn Inc | *B#:  (Bar Number)*381713 *N:  (Attorney Name)*Schandler, Brad I | *B#:  (Bar Number)*512605 *N:  (Attorney Name)*Levine, Scott J |
| Defendant | Lujan, Edler | *B#:  (Bar Number)*495115 *N:  (Attorney Name)*Jean-Francois, James | |

## ⚓ Hearing Details

Number of Hearing: 8  ▬

⮡ Export to ▾

| Hearing Date | Hearing Time | Hearing Code | Description | Hearing Location |
|---|---|---|---|---|
| 09/04/2019 | 10:30AM | SPECSETS | Special Sets | North Dade Justice Center Courtroom 2-8 15555 Biscayne Blvd |
| 05/23/2019 | 10:45AM | SPECSETS | Special Sets | North Dade Justice Center Courtroom 2-8 15555 Biscayne Blvd |
| 12/17/2018 | 2:00PM | SPECSETS | Special Sets | North Dade Justice Center Courtroom 2-8 15555 Biscayne Blvd |
| 11/28/2018 | 10:00AM | 5MIN | 5 Minute Motion Calendar | North Dade Justice Center Courtroom 2-8 15555 Biscayne Blvd |
| 03/15/2018 | 10:00AM | 5MIN | 5 Minute Motion Calendar | North Dade Justice Center Courtroom 2-8 15555 Biscayne Blvd |
| 10/20/2017 | 9:00AM | SALE | Mortgage Foreclosure Sale | |
| 08/31/2017 | 10:00AM | 5MIN | 5 Minute Motion Calendar | North Dade Justice Center Courtroom 2-8 15555 Biscayne Blvd |
| 06/29/2017 | 10:00AM | 5MIN | 5 Minute Motion Calendar | North Dade Justice Center Courtroom 2-8 15555 Biscayne Blvd |

## 🔊 Dockets

Dockets Retrieved: 148  ▬

⮡ Export to ▾

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 🗎 | 139 | 11/01/2019 | | Amended Notice | Event | **OF COMPLIANCE WITH FLA STATUTE 48** |
| | 137 | 10/31/2019 | | Notice of Removal to Federal Court | Judgment | |
| 🗎 | 136 | 10/31/2019 | | Notice of Removal to Federal Court | Event | *Parties: Lujan Edler* |
| 🗎 | 135 | 10/29/2019 | | Notice of Compliance | Event | |
| 🗎 | 134 | 10/07/2019 | | Amended Complaint | Event | |
| | 133 | 09/25/2019 | | Receipt: | Event | **RECEIPT#:3320008 AMT PAID:$10.00 COMMENT: ALLOCATION CODE QUANTI UNIT AMOUNT 2139-SUMMONS ISSUE FI $10.00 $10.00 TENDER TYPE:CHECK TENDER AMT:$10.00 TENDER TYPE:CHE TENDER AMT:$10.00 RECEIPT DATE:09/2** |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | 132 | 09/25/2019 | | Receipt: | Event | RECEIPT#:3320007 AMT PAID:$10.00 COMMENT: ALLOCATION CODE QUANTI UNIT AMOUNT 2139-SUMMONS ISSUE FI $10.00 $10.00 TENDER TYPE:CHECK TENDER AMT:$10.00 TENDER TYPE:CHE TENDER AMT:$10.00 RECEIPT DATE:09/2 |
| | | 09/25/2019 | | 20 Day Summons Issued | Service | |
| | 131 | 09/25/2019 | | 20 Day Summons Issued | Event | *Parties: Lujan Edler* |
| | 130 | 09/23/2019 | | Receipt: | Event | RECEIPT#:2800001 AMT PAID:$18.00 COMMENT: ALLOCATION CODE QUANTI UNIT AMOUNT 2120-COPY 12 $1.00 $12.0 2121-CERTIFIED 3 $2.00 $6.00 TENDER TYPE:VISA CARD TENDER AMT:$18.00 RECEIPT DATE:09/23/2019 REGISTER#:2 |
|  | 129 | 09/19/2019 | 31619:3834 | Order Vacating Judgment | Event | AMENDED FJ DATED 8/31/17, AND VACATING ISSUANCE OF CERTIFICATE TITLE *Parties: Lujan Edler* |
|  | 128 | 09/06/2019 | | Notice: | Event | OF SUPPLEMENTAL AUTHORITY |
|  | 127 | 09/04/2019 | | Memorandum of Law | Event | IN SUPPORT OF MOTION TO VACATE JUDGMENT |
|  | 126 | 09/04/2019 | | Notice of Filing: | Event | FLA STATS |
|  | 125 | 09/04/2019 | | Memorandum of Disposition | Event | |
| | | 09/04/2019 | | Special Sets | Hearing | |
|  | 124 | 08/22/2019 | | Notice of Hearing- | Event | 9/4/19 @ 10:30 |
|  | 123 | 06/06/2019 | | Motion to Vacate Judgment | Event | |
| | 119 | 05/28/2019 | | Receipt: | Event | RECEIPT#:2830007 AMT PAID:$7.00 COMMENT: ALLOCATION CODE QUANTI UNIT AMOUNT 2120-COPY 5 $1.00 $5.00 2121-CERTIFIED 1 $2.00 $2.00 TENDER TYPE:CASH TENDER AMT:$20.00 TENDE TYPE:CHANGE TENDER AMT:($ |
|  | 122 | 05/24/2019 | | Notice: | Event | DISREGARD: UN-ISSUED NOTICE OF ACTION |
|  | 118 | 05/24/2019 | | Affidavit of Diligent Search | Event | |
|  | 121 | 05/23/2019 | | Memorandum of Disposition | Event | |
|  | 120 | 05/23/2019 | | Order: | Event | ON PLTF'S MTN FOR REHEARING ON DEFT'S MTN TO QUASH SERVICE IS DEI |

OCS Search                                                          https://www2.miami-dadeclerk.com/ocs/Search.aspx

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 05/23/2019 | | Special Sets | Hearing | |
| 📄 | 117 | 05/18/2019 | | Response to Motion | Event | **FOR REHEARING** |
| 📄 | 116 | 05/18/2019 | | Response to Motion | Event | **FOR REHEARING** |
| 📄 | 115 | 05/16/2019 | | Memorandum of Law | Event | |
| 📄 | 114 | 04/08/2019 | | Notice of Hearing- | Event | **5/23/19 @ 10:45** |
| | 112 | 01/22/2019 | | Receipt: | Event | **RECEIPT#:2590012 AMT PAID:$7.00 COMMENT: ALLOCATION CODE QUANTI UNIT AMOUNT 2120-COPY 5 $1.00 $5.00 2121-CERTIFIED 1 $2.00 $2.00 TENDER TYPE:AMERICAN EXPRESS TENDER AMT:$7.00 RECEIPT DATE:01/22/2019 REGISTER#:259** |
| 📄 | 113 | 01/21/2019 | | Motion for Rehearing | Event | |
| 📄 | 111 | 01/14/2019 | | Order: | Event | **GRANTING DEFENDANT'S MOTION TO QUASH SERVICE OF PROCESS & SUGGESTION OF LACK OF JURISDICTIC** |
| 📄 | 110 | 12/20/2018 | | Memorandum of Law | Event | **IN RESPONSE TO MOTION TO QUASH** |
| 📄 | 109 | 12/18/2018 | | Notice of Filing: | Event | **AUTHORITY ON CONDUCT NOT CONSITUTING WAIVER OF PERSONAL JURISDICTION DEFENSE** |
| 📄 | 108 | 12/17/2018 | | Memorandum of Disposition | Event | |
| | | 12/17/2018 | | Special Sets | Hearing | |
| 📄 | 107 | 12/14/2018 | | Notice of Unavailability/absence | Event | **DECEMBER 21, 2018, THROUGH, AND INCLUDING, JANUARY 4, 2019.** |
| 📄 | 106 | 11/28/2018 | | Memorandum of Disposition | Event | |
| 📄 | 105 | 11/28/2018 | | Order on Motion to Compel | Event | **ANSWERS TO INTERROGATORIES** |
| | | 11/28/2018 | | 5 Minute Motion Calendar | Hearing | |
| 📄 | 104 | 11/19/2018 | | Objection: | Event | **TO CROSS-NOTICE OF HEARING** |
| 📄 | 103 | 11/15/2018 | | Notice: | Event | **OF SUPPLEMENTAL AUTHORITY** |
| 📄 | 102 | 11/09/2018 | | Notice of Hearing- | Event | **11/28/18 @ 1:30** |
| 📄 | 101 | 11/09/2018 | | Motion: | Event | **FOR ORDER PRIORITIZING SEQUENCE ( HEARINGS** |
| 📄 | 100 | 11/09/2018 | | Notice of Filing: | Event | **ITEMS EVIDENCING STATUS AS FOREIG NATIONAL & DOMICILE** |

OCS Search                                                                 https://www2.miami-dadeclerk.com/ocs/Search.aspx

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | 99 | 10/31/2018 | | Notice: | Event | **SUGGESTION OF LACK OF SUBJECT MATTER JURISDICTION** |
| | 98 | 10/25/2018 | | Notice of Filing: | Event | **MATERIALS RELEVENT TO PROCEEDIN** |
| | 97 | 10/22/2018 | | Notice of Hearing- | Event | **11/28/18 @ 10:00** |
| | 96 | 10/22/2018 | | Notice of Hrg Special Appt | Event | **12/17/18 @ 2:00** |
| | 95 | 10/22/2018 | | Notice of Hrg Special Appt | Event | **12/17/18 @ 2:00** |
| | 94 | 10/22/2018 | | Notice of Hrg Special Appt | Event | **12/17/18 @ 2:00** |
| | 93 | 10/19/2018 | | Motion to Compel | Event | **SUPPORT AS FOLLOWSP** |
| | 92 | 10/15/2018 | | Motion for Clarification | Event | |
| | 91 | 10/11/2018 | | Order: | Event | **GRANTING MOTION TO RESCHEDULE HEARING** |
| | 90 | 10/10/2018 | | Memorandum of Disposition | Event | |
| | 88 | 10/09/2018 | | Motion to Quash | Event | |
| | 87 | 10/08/2018 | | Motion to Quash | Event | *Parties: Lujan Edler* |
| | 89 | 10/05/2018 | | Memorandum of Disposition | Event | |
| | 86 | 10/05/2018 | | Notice of Interrogatory | Event | |
| | 85 | 10/05/2018 | | Request for Production | Event | |
| | 84 | 10/05/2018 | | Notice of Interrogatory | Event | |
| | 83 | 10/05/2018 | | Amended Notice | Event | **OF SUPPLEMENTAL AUTHORITY** |
| | 82 | 10/05/2018 | | Response to Request for Admissions | Event | |
| | 81 | 10/04/2018 | | Motion: | Event | **TO RESCHEDULE HEARING** |
| | 80 | 10/03/2018 | | Notice: | Event | **OF SUPPLEMENTAL AUTHORITY** |
| | 79 | 09/05/2018 | | Notice of Interrogatory | Event | |
| | 78 | 09/04/2018 | | Request for Admissions | Event | |
| | 77 | 08/17/2018 | | Notice of Hrg Special Appt | Event | **10/10/18 @ 1:30** |
| | 76 | 06/26/2018 | | Email Notice: | Event | **JAMESJEANFRANCOISESQ@HOTMAIL.** |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 75 | 06/26/2018 | | Notice of Appearance | Event | |
| 📄 | 74 | 06/26/2018 | | Motion to Vacate Judgment | Event | |
| 📄 | 71 | 03/16/2018 | 30899:307 | Previously Recorded Document | Event | **AMENDED TITLE** |
| 📄 | 73 | 03/15/2018 | | Memorandum of Disposition | Event | **DIRECTING CLERK TO ISSUE CORRECT CERTIFICATION OF TITLE** |
| 📄 | 72 | 03/15/2018 | | Memorandum of Disposition | Event | |
| | 70 | 03/15/2018 | | Receipt: | Event | **RECEIPT#:2140080 AMT PAID:$3.00 COMMENT: ALLOCATION CODE QUANTI UNIT AMOUNT 2121-CERTIFIED 1 $2.00 $ 2120-COPY 1 $1.00 $1.00 TENDER TYPE:CASH TENDER AMT:$3.00 RECEIP DATE:03/15/2018 REGISTER:214** |
| | | 03/15/2018 | | 5 Minute Motion Calendar | Hearing | |
| 📄 | 69 | 02/26/2018 | | Notice of Hearing- | Event | **3/15/18 @ 10:00** |
| 📄 | 68 | 02/23/2018 | | Motion: | Event | **FOR ORDER DIRECTING CLERK TO ISSU CORRECTED CERTIFICATE OF TITLE** |
| | | 11/09/2017 | | Writ of Possession Issued | Service | |
| 📄 | 65 | 11/09/2017 | | Writ of Possession Issued - No Sheriff Fee | Event | **WRIT OF POSSESSION PICKED UP BY A** *Parties: Lujan Edler* |
| 📄 | 66 | 11/07/2017 | 30753:2932 | Certificate of Title | Event | |
| | 64 | 11/07/2017 | | Mortgage Foreclosure Voucher Issued | Event | **DOC STAMPS/PL/PN/74834** |
| 📄 | 63 | 11/07/2017 | | Certificate of Disbursement (plaintiff) | Event | |
| | 62 | 10/26/2017 | | Mortgage Foreclosure Deposit | Event | **PL/5704/DOC STAMPS** |
| | 61 | 10/26/2017 | | Bid Amount | Event | **PL/5704/BIDS** |
| | 60 | 10/26/2017 | | Receipt: | Event | **RECEIPT#:2100012 AMT PAID:$70.60 ALLOCATION CODE QUANTITY UNIT AMOUNT 3214-FORCL POST-SALE FE 1 $70.00 $70.00 3210-DOC. STAMPS - DEEI $0.60 $0.60 TENDER TYPE:CHECK TEND AMT:$70.60 RECEIPT DATE:10/26/2017 REGISTE** |
| 📄 | 59 | 10/20/2017 | | Affidavit of: | Event | **PLAINTIFF** |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 58 | 10/20/2017 | | Notice: | Event | **CERTIFICATE OF SALE** |
| 📄 | 57 | 10/20/2017 | | Notice: | Event | **CERTIFICATE OF SALE** |
| | | 10/20/2017 | | Mortgage Foreclosure Sale | Hearing | |
| 📄 | 56 | 10/03/2017 | | Proof of Publication | Event | |
| 📄 | 55 | 09/26/2017 | | Notice of Sale | Event | **SALE DATE: 10/20/2017** |
| 📄 | 54 | 09/05/2017 | | Notice: | Event | **OF JUDICIAL SALE** |
| | 52 | 09/05/2017 | | Text | Event | **SALE SHALL BE CONDUCTED AT THE SUBJECT PROPERTY.** |
| 📄 | 53 | 08/31/2017 | | Memorandum of Disposition | Event | |
| 📄 | 51 | 08/31/2017 | 30680:1904 | Amended Final Judgment | Event | **OF FORECLOSURE** |
| | | 08/31/2017 | | 5 Minute Motion Calendar | Hearing | |
| 📄 | 50 | 08/08/2017 | | Notice of Hearing- | Event | **8/31/17 @ 10:00** |
| 📄 | 49 | 08/07/2017 | | Motion to Modify Final Judgmt | Event | |
| 📄 | 48 | 08/03/2017 | | Affidavit of Indebtedness | Event | |
| 📄 | 47 | 08/03/2017 | | Affidavit as to Costs | Event | |
| 📄 | 46 | 08/03/2017 | | Affidavit as to Attorney Fees | Event | |
| 📄 | 45 | 08/02/2017 | | Order for Substitution of Counsel | Event | *Parties: Aventura Isles Master Homeowners Assn Inc* |
| 📄 | 44 | 08/02/2017 | | Order Cancelling Foreclosure Sale | Event | **ON 08-04-17** |
| 📄 | 43 | 07/31/2017 | | Motion for Substitution of Counsel | Event | |
| 📄 | 42 | 07/31/2017 | | Motion: | Event | **TO CANCEL SALE** |
| 📄 | 41 | 07/28/2017 | | Mortgage Foreclosure Publication Fee | Event | **FOR SALE OF 8/4/17** |
| 📄 | 39 | 07/12/2017 | | Notice of Sale | Event | **ON 08/04/2017** |

OCS Search                                                                    https://www2.miami-dadeclerk.com/ocs/Search.aspx

| Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 40 | 07/03/2017 | | Receipt: | Event | **RECEIPT#:2340034 AMT PAID:$70.00 ALLOCATION CODE QUANTITY UNIT AMOUNT 3219-FORCL PRE-SALE FEE 1 $70.00 $70.00 TENDER TYPE:CHECK TENDER AMT:$70.00 RECEIPT DATE:07/03/2017 REGISTER#:234 CASHIER:ADROVM** |
| 38 | 07/03/2017 | | Mortgage Collection Fee | Event | |
| 37 | 06/30/2017 | | Text | Event | **COPY OF FINAL JUDGMENT SENT TO FORECLOSURE WITH CHECK** |
| 36 | 06/29/2017 | | Default Final Judgment | Judgment | |
| 35 | 06/29/2017 | 30598:1310 | Default Final Judgment | Event | *Parties: Lujan Edler* |
| 34 | 06/29/2017 | | Memorandum of Disposition | Event | |
| | 06/29/2017 | | 5 Minute Motion Calendar | Hearing | |
| 33 | 05/02/2017 | | Affidavit of Reasonable Attorney's Fees | Event | |
| 32 | 05/02/2017 | | Notice Of Filing Affidavit Of Reasonable Attorney Fees | Event | |
| 31 | 05/02/2017 | | Notice of Hearing- | Event | **6/29/17 @ 10:00** |
| 30 | 04/25/2017 | | Affidavit as to Attorney Fees | Event | |
| 29 | 04/25/2017 | | Affidavit as to Costs | Event | |
| 28 | 04/25/2017 | | Affidavit of Indebtedness | Event | |
| 27 | 04/25/2017 | | Motion for Final Judgment | Event | |
| 26 | 04/07/2017 | | Notice of Compliance | Event | |
| 25 | 04/06/2017 | | Order of Default | Event | *Parties: Lujan Edler* |
| 24 | 04/05/2017 | | Motion for Default | Event | |
| 23 | 02/15/2017 | | Text | Event | **COPY OF COMPLAINT & NOTICE MAILE ELDER LUJAN AND UNKN SPOUSE OF ELDER LUJAN** |
| | 02/15/2017 | | Notice of Action Issued | Service | |

https://www2.miami-dadeclerk.com/ocs/Search.aspx

Case 1:19-cv-24494-MGC   Document 7   Entered on FLSD Docket 11/04/2019   Page 19 of 66

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 22 | 02/15/2017 | | Notice of Action - Publication | Event | *Parties: Aventura Isles Master Homeowners Assn Inc; Lujan Edler* |
| 📄 | 21 | 02/09/2017 | | Affidavit of: | Event | **SUPPORT OF SERVICE BY PUBLICATION** |
| 📄 | 20 | 02/09/2017 | | Affidavit of Diligent Search | Event | |
| 📄 | 19 | 02/09/2017 | | Directions to The Clerk | Event | |
| 📄 | 18 | 02/09/2017 | | Notice Of Voluntary Dismissal Of Unknown Parties | Event | |
| 📄 | 17 | 12/06/2016 | | Summons Returned - No Service | Event | |
| 📄 | 16 | 11/30/2016 | | Service Return for Unknown Party | Event | **UNSERVED** |
| 📄 | 15 | 11/30/2016 | | Service Return for Unknown Party | Event | **UNSERVED** |
| 📄 | 14 | 11/30/2016 | | Service Return for Unknown Party | Event | **UNSERVED** |
| | 13 | 11/15/2016 | | Receipt: | Event | **RECEIPT#:3630135 AMT PAID:$40.00 NAME:LEVINE, SCOTT J 2149 N COMME PKWY WESTON FL 33326-3238 ALLOCAT CODE QUANTITY UNIT AMOUNT 2139- SUMMONS ISSUE FEE 1 $10.00 $10.00 21 SUMMONS ISSUE FEE 1 $10.00 $10.00 21 SUMMONS ISSUE** |
| | 12 | 11/15/2016 | | Receipt: | Event | **RECEIPT#:3630087 AMT PAID:$305.00 NAME:LEVINE, SCOTT J 2149 N COMME PKWY WESTON FL 33326-3238 ALLOCA CODE QUANTITY UNIT AMOUNT 2100- COUNTY FILING FEE 1 $300.00 $300.00 2 RECORDING FEE 1 $5.00 $5.00 TENDER TYPE:E-FILING A** |
| 📄 | 10 | 11/14/2016 | | ESummons 20 Day Issued | Event | |
| 📄 | 9 | 11/14/2016 | | ESummons 20 Day Issued | Event | |
| 📄 | 8 | 11/14/2016 | | ESummons 20 Day Issued | Event | |
| | | 11/14/2016 | | 20 Day Summons Issued | Service | |
| 📄 | 7 | 11/14/2016 | | ESummons 20 Day Issued | Event | *Parties: Lujan Edler* |

OCS Search                                                                 https://www2.miami-dadeclerk.com/ocs/Search.aspx

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 6 | 11/14/2016 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 📄 | 5 | 11/14/2016 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 📄 | 4 | 11/14/2016 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 📄 | 3 | 11/14/2016 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 📄 | 11 | 11/11/2016 | 30308:1420 | Lis Pendens | Event | |
| 📄 | 1 | 11/11/2016 | | Complaint | Event | **$4092.13** |

◀◀ Back to Search

**Please be advised:**

The Miami-Dade Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office. This website does not provide legal advice of any kind. If you require legal advice, please consult a qualified attorney of your choosing.

Service through the Clerk's electronic access is not the official record of the Clerk. In order to assure the accuracy of the data or information, the Clerk's Office should be consulted regarding the Official Court Record.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services (https://www2.miami-dadeclerk.com/Developers). To review the complete Miami-Dade County Disclaimer, follow this Link. (https://www8.miamidade.gov/global/disclaimer/disclaimer.page)

Email (https://miamidadecounty.co1.qualtrics.com/SE/?SID=SV_bDvccbiqJBvQ2LH)   |
Logout (/PremierServices/Logout.aspx?ReturnUrl=https://www2.miami-dadeclerk.com/ocs/Search.aspx)
Clerk's Home (http://www.miami-dadeclerk.com/home.asp)   |
Privacy Statement (https://www8.miamidade.gov/global/disclaimer/privacy-and-security.page)   |
Disclaimer (https://www8.miamidade.gov/global/disclaimer/disclaimer.page)   |   Contact Us (http://www.miami-dadeclerk.com/contact.asp)   (http://www.miamidade.gov)
|   About Us (http://www.miami-dadeclerk.com/about.asp)
2015 Clerk of the Courts. All Rights reserved.

MIAMI-DADE COUNTY

11/4/2019, 11:29 AM

# Exhibit "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

ELDER LUJAN,

      Plaintiff,

v.

SAMUEL R. DANZIGER AS TRUSTEE OF THE IPI LAND
TRUST 2017-4; THE IPI LAND TRUST 2017; AVENTURA
ISLE MASTER HOMEOWNERS ASSOCIATION, INC;
BRAD I. SCHANDLER, and BROUGH, CHADROW
& LEVINE, P.A.

      Defendants.

_____/

## **COMPLAINT**

    **ELDER LUJAN**, [Plaintiff], sues to quiet title to a real property located at 662 NE 191

Terrace, Miami, FL 33179.   Plaintiff also sues various Defendants for Cancellation of Certificate

of Title, Conversion, Constructive Fraud, Aiding and Abetting Constructive Fraud, and Civil

Conspiracy.

    The Defendants being sued in this action are:

      i.      **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND
TRUST 2017-4**;

      ii.     **IPI LAND TRUST 2017-4**

     iii.    **AVENTURA ISLE MASTER HOMEOWNERS ASSOCIATION, INC.**;

     iv.    **BRAD I. SCHANDLER**;

      v.     **BROUGH CHADROW & LEVINE, P.A.**

**JURISDICTION AND VENUE**

1.  Jurisdiction is founded on 28 U.S.C. § 1332(a)(2) (Diversity of Citizenship) as this suit is between a citizen of the State of Florida and a citizen or subject of a foreign state (Peru), and involves a claims for damages that exceed $75,000.00, exclusive of attorney's fees, interest and costs.

2.  Pursuant to 28 U.S.C. § 1391(b)(1)&(2), venue is properly situated in the Southern District of Florida, as it is the situs of Defendants' residence and/or principal place of business.  In addition, Southern District of Florida serves as proper venue since it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated and subject property is located."

**PARTIES**

3.  Plaintiff, **ELDER LUJAN**, ["**LUJAN**"], is a natural person living and a citizen of Peru. Plaintiff is/was the owner of  a real property located in Miami-Dade County, Florida. The postal address of subject real property is 662 NE 191 Terrace, Miami, FL 33179.

4.  Defendant, **SAMUEL R. DANZIGER,** is the named Trustee of a Florida Land Trust, Defendant, **IPI LAND TRUST 2017-4,**which is believed to be incorporated in the State of Florida.  **SAMUEL R. DANZIGER** is also a retired attorney licensed to practice law in the Florida and is believed to be a resident of Miami-Dade County, Florida, and over the age of 18 years.

5.  Defendant, **AVENTURA ISLE MASTER HOMEOWNERS ASSOCIATION, INC.,**

[Hereinafter, **AVENTURA ISLE**], is a Florida non profit corporation, which operates in Miami-Dade County, in the State of Florida.  Moreover, **AVENTURA ISLE**, is the Homeowners Association that initiated a foreclosure of lien lawsuit in the County Court of Miami-Dade County, against the Plaintiff **LUJAN**, under Case Number 16-19170-CC-23(03).  At all relevant times, **AVENTURA ISLE**, approved of **BRAD I. SCHANDLER's** effort to collude and conspire with **SAMUEL R. DANZIGER** in the preparation of an assignment of **AVENTURA ISLE's** interests and/or rights in the foreclosure case filed by **AVENTURA ISLE** against Plaintiff, to **SAMUEL R. DANZIGER**, **As Trustee Of the IPI Land Trust 2017-4**.

6. Defendant, **BRAD I. SCHANDLER**, [Hereinafter, "**SCHANDLER**"], is a natural person employed at Brad I. Schandler, Attorney At Law, which office is located at 4700 Sheridan Street, Suite J, Hollywood, FL 33021.  **SCHANDLER** is/was  **AVENTURA ISLE's** attorney.  **SCHANDLER** was the attorney that was substituted for the Law Office Of **BROUGH, CHADROW & LEVINE, P.A.**, in the Miami-Dade County lien foreclosure case brought by **AVENTURA ISLE**.  Among other things, **SCHANDLER** is the attorney who performed legal services related to a real estate transaction involving both **AVENTURA ISLE** and  **SAMUEL R. DANZIGER, As Trustee Of the IPI Land Trust 2017-4,** [Hereinafter, "**DANZIGER**"], at the same time.

7. Defendant, **BROUGH, CHADROW & LEVINE, P.A.,** is a law firm whose principal place of business is 2149 North Commerce Parkway, Weston, Florida 3326, and among other things, performs legal services related to real estate transactions, and provides foreclosure services to **AVENTURA ISLE**.

## GENERAL ALLEGATIONS

**Background and Chain Of Title**:

8.     The Subject Property has the following legal description:

   **Lot 11, Block 37 of CHAMPION LAKES, According to the Plat thereof,
   as recorded in Plat Book 169, Page 71 of the Public Records Of Miami-Dade
   County, Florida**

   **Mailing Address:      662 NE 191 Terrace, Miami, FL 33179.**

9.     By Special Warranty Deed dated June 16, 2014, **ELDER LUJAN**, a Married Man,

   purchased the subject property from the original Developer, Williams Island Ventures,

   LLC, a Delaware Limited Liability Company.  The Special Warranty Deed is recorded in

   OR BK 29223, PG 0074-75 of the Public Records of Miami-Dade County, Florida.

   **LUJAN** purchased said property cash and the property did not have any mortgage on it at

   the time **AVENTURA ISLE** commenced the foreclosure proceedings against the

   Plaintiff.  (See Exhibit 1, "Warranty Deed").

10.    On November 11, 2016, **BROUGH, CHADROW & LEVINE, P.A.**, commenced and

   prosecuted foreclosure litigation proceedings against **LUJAN**, under Case No.: 16-19170

   CC 23, as evidenced by a Lis Pendens recorded in OR BK 30308 Page 1420; a Final

   Judgment recorded in OR BK 30598, Page 1310, and as Amended in OR BK 30680, Page

   1904, Certificate of Title, in favor of **SAMUEL R. DANZIGER asTrustee of the IPI**

   **Land Trust 2017-4**, recorded in OR BK 30753, Page 2932 as amended in OR BK 30899,

   Page 307, in the underlying lien foreclosure lawsuit filed in Miami-Dade County Court

   under Case Number 16-19170-CC-23(03).  Also see the following Books and Pages OR

   BK 30243, Page 3434. (See Composite Exhibit 2, "Lien Foreclosure Suit" ).

**Background– Why Elder Lujan is the Rightful Owner of the Subject Property**.

11.   **ELDER LUJAN** purchased the real property subject to this lawsuit back in June 16, 2014, from the original developer Williams Island Ventures, LLC, for about $300,000.00, in cash. (See Exhibit 1).

12.   **ELDER LUJAN** is citizen of country of Peru, who purchased the real property that is subject to this lawsuit as a vacation home in Florida for him, his friends and family to stay during their visits to Florida.

13.   On September 26, 2016, **AVENTURA ISLE**, caused a Claim of Lien to be filed against **LUJAN**'s real property in Miami-Dade County Public Records in OR BK 30243, Page 3434.  The amount of the lien was $3,111.42.  Said Claim of Lien purported to show **LUJAN** owed monies to **AVENTURA ISLE,** including, but not limited to, Maintenance Assessments that were due for two (2) quarters: the quarter starting April 01, 2016, and the other quarter, starting September 01, 2016.  (See Exhibit 3, Claim of Lien).

14.   On November 11, 2016, **AVENTURA ISLE**, filed in Miami-Dade County Court/Civil Division, a complaint for foreclosure of its Claim of Lien against **LUJAN**, which case was assigned a case number, to wit:  2016-019170-CC-23.

15.   While the claim of lien foreclosure case was pending in Miami-Dade County Court, **LUJAN** contacted **AVENTURA ISLE** to inquire about the amount owed by him, including, but not limited to, maintenance assessments, interest, late charges, etc.  At that point in time, **AVENTURA ISLE** made a series of misrepresentations as well as material omissions that were intended to induce **LUJAN**'s reliance and did elicit **LUJAN**'s reliance, to wit:

a.     **AVENTURA ISLE** misrepresented to **LUJAN** that the amount that **LUJAN** owed was inclusive of his arrearage, late fees, interest, attorneys fees associated with collection of his debt, costs;

b.     **AVENTURA ISLE** misrepresented to **LUJAN** that payment of the amount owed would bring his account current and that it was an accord and satisfaction;

c.     **AVENTURA ISLE** misrepresented to the court in the foreclosure case that **LUJAN's** account was incurring interest charges at the rate of 18% per annum, through April 05, 2017, when **AVENTURA ISLE** filed an Affidavit of Indebtedness in the Miami-Dade County Court lien foreclosure lawsuit being prosecuted against **LUJAN** despite receiving fulling payment from **LUJAN** in February 2017.

d.     **AVENTURA ISLE** and/or its representative instructed **LUJAN** that payment was to be made directly to **AVENTURA ISLE** via electronic payment, which he did make, said information constitute a misrepresentation on the part of **AVENTURA ISLE**;

e.     **AVENTURA ISLE** misrepresented to **LUJAN** that his account was in collection status instead of in actual litigation that had been initiated and was being prosecuted by **AVENTURA ISLE** and its attorney who had no intention to terminate and dismiss the Miami-Dade County Court lien foreclosure lawsuit being prosecuted against **LUJAN** even after **LUJAN** made his electronic payment as told;

f.      **AVENTURA ISLE** misrepresented to **LUJAN** that there was no adversarial litigation between them, that **AVENTURA ISLE** was not being represented by counsel when it was, and that to end the collection process, **LUJAN**'s payments had to be sent directly to **AVENTURA ISLE** instead of to its counsel of record;

g.      **AVENTURA ISLE** misrepresented to **LUJAN** that **AVENTURA ISLE** and/or its authorized agent was authorized to accept **LUJAN**'s payment directly;

h.      **AVENTURA ISLE** made a material omission of fact to **LUJAN** that his payment would not cause **AVENTURA ISLE** to terminate and dismiss the Miami-Dade County Court lien foreclosure lawsuit being prosecuted against **LUJAN** because **AVENTURA ISLE** did not even informed **LUJAN** that his property was in foreclosure litigation;

i.      **AVENTURA ISLE** made a material omission of fact to **LUJAN** that **AVENTURA ISLE** did not intend to terminate and dismiss the Miami-Dade County Court lien foreclosure lawsuit being prosecuted against **LUJAN** again because **AVENTURA ISLE** never disclosed to **LUJAN** that his property was in foreclosure lawsuit;

j.      **AVENTURA ISLE** made a material omission of fact to **LUJAN** that **AVENTURA ISLE**, despite its communications with LUJAN, it intended to obtain a default against him in the lien foreclosure lawsuit on grounds that **AVENTURA ISLE** did not have **LUJAN**'s contact information and

did not know **LUJAN**'s "whereabouts" when in fact AVENTURA ISLE

and/or its agent were communicated with LUJAN via telephone and e-

mail;

    k.    **AVENTURA ISLE** made a material omission of fact to **LUJAN** as to

**AVENTURA ISLE**'s representation by counsel in Miami-Dade County

Court lien foreclosure lawsuit being prosecuted against **LUJAN**;

    l.    **AVENTURA ISLE** made a material omission of fact to **LUJAN** that

**AVENTURA ISLE** did not intend to observe or respect **LUJAN**'s right

of redemption in the subject real property once **AVENTURA ISLE**

obtained an Order of Default and Final Judgment in the Miami-Dade

County Court lien foreclosure lawsuit being prosecuted against **LUJAN**

when **AVENTURA ISLE** and/or its agent informed **LUJAN** that his

account has a zero balance, his next payment was due in October 2017;

16.    Relying on the truth and veracity of **AVENTURA ISLE**'s statements and

representations, Plaintiff, **LUJAN**, on February 14, 2017, sent an E-check for $6,542.35,

which was more than the amount **AVENTURA ISLE** represented needed to be paid in

order for **LUJAN** to bring his account current and up-to-date.  **AVENTURA ISLE**

cashed and accepted **LUJAN**'s E-check payment of $6,542.35, which brought his account

not only to a "current" status with a zero balance, **LUJAN**'s overpayment resulted in his

having a credit with **AVENTURA ISLE**, as of February 14, 2017.  The next maintenance

assessment for which payment would be due was not until April 1, 2017. (See Exhibit 4,

Payment Receipt).  As such, **LUJAN** had made a full accord and satisfaction of

**AVENTURA ISLE**'s Claim of Lien that was the subject of the lawsuit in Miami-Dade County Court.  **AVENTURA ISLE** purposefully concealed from **LUJAN** the fact that there was a pending lien foreclosure case filed against him and that, even despite **LUJAN**'s overpayment of the amount owed by him, **AVENTURA ISLE** intended to proceed with the lien foreclosure litigation against him.

17.     On February 15, 2017, **AVENTURA ISLE** filed an Notice of Action-Publication following the filing of an Affidavit of Diligent Search and Inquiry (filed on 02/09/2017) wherein **AVENTURA ISLE** represented to the court that it was unable to find or locate **LUJAN**'s whereabouts.  Yet, per **AVENTURA ISLE**'s verbal instructions made over the telephone, **LUJAN** made a payment in the amount of $6,542.35, on February 14, 2017, that is, one day before **AVENTURA ISLE**'s filing Notice of Action-Publication. The amount that **AVENTURA ISLE** received on February 14, 2017, fully satisfied balance owed on **LUJAN**'s account. (See Exhibit 5, Notice of Publication).

18.     On April 05, 2017, again, **AVENTURA ISLE** filed a Motion for Default against **LUJAN** when **LUJAN** did not owe any money to **AVENTURA ISLE**.  On April 06, 2017, the Miami Dade County Court entered an Order of Default against **LUJAN** for failure to file or serve an Answer in the action.  Yet, as the Order of Default was being entertained by the Court, **AVENTURA ISLE** and/or its agent had actual knowledge that it failed to impart with the Court that **LUJAN** had fully satisfied his financial obligations with **AVENTURA ISLE**, and that there no longer was a justiciable case or controversy between **AVENTURA ISLE** and **LUJAN** requiring the Court's authorized decisions since **AVENTURA ISLE**'s Claim of Lien had been discharged by **LUJAN** 's payment.

(See Exhibit 6).

19.   On April 25, 2017, **AVENTURA ISLE** filed an Affidavit of Indebtedness in the

foreclosure case when there was no debt owed by **LUJAN** to **AVENTURA ISLE**.  The

Affidavit of Indebtedness, filed by **AVENTURA ISLE**, and dated 04/07/2017, clearly

showed that as of April 05, 2017, Plaintiff owed the following amounts to **AVENTURA**

**ISLE**: (See Exhibit 7).

| | | |
|---|---|---|
| 1. | Assessments good through 04/05/17 | $5,381.81 |
| 2. | Late charges through 04/05/17 | 175.00 |
| 3. | Legal advertising fees through 04/05/17 | 10.00 |
| 4. | 18% Annual Interest through 04/05/17 | 478.74 |
| | Total Amount owed by Plaintiff | $6,045.55 |
| 5. | Amount Received from Defendant on 02/14/17 | ($6,542.35) |
| **6.** | **Plaintiff has a credit balance of** | **$496.80** |

20.   On June 29, 2017, **AVENTURA ISLE**, through its attorney, **BROUGH, CHADROW,**

**& LEVINE, P.A.**, caused the court to enter a Default Final Judgment against **LUJAN**.

Final Judgment entered by the Court scheduled **LUJAN**'s subject real property to be sold

at the Judicial Foreclosure Sale scheduled on August 04, 2017.  The Notice of Judicial

Sale By The Clerk scheduled the judicial sale to be conducted by the Clerk to the highest

and best bidder for cash on-line at www.MiamiDade.RealForeclosure.com, at 09:00

o'clock, AM, on August 04, 2017.

21.   On July 31, 2017, prior to the on-line foreclosure sale by the Clerk, **BROUGH,**

**CHADROW, & LEVINE, P.A.**, was substituted by Attorney **BRAD I. SCHANDLER**,

[Hereinafter, **SCHANDLER**].  Attorney **SCHANDLER** filed a Motion to Cancel Sale

and Amend Judgment. (See Exhibit 8).  Pursuant to a jointly executed Stipulation for

Substitution of Counsel, which was granted by way of court order, dated 08/02/2017,

Attorney **SCHANDLER** resumed **AVENTURA ISLE**'s representation after **BROUGH,**

**CHADROW, & LEVINE, P.A.,** was released.  Moreover, in that same Stipulation of

Substitution of Counsel, **SCHANDLER** inserted the following statement:  "Plaintiff

(**AVENTURA ISLE**) by its assignee, Samuel R. Danziger, as Trustee of the IPI Land

Trust 2017-4, hereby consents to the substitution of counsel specified above as required

by Rule 2.060(h), Florida Rules of Judicial Administration."  Yet, there is no Assignment

of Interest from **AVENTURA ISLE** appearing as being recorded in Miami-Dade County

Public Records nor an Assignment of Interest signed by **AVENTURA ISLE's** Board of

Directors filed with the Miami-Dade Clerk of Courts.

22.    On August 07, 2017, Attorney **SCHANDLER** filed a Motion To Amend Judgment and

Reschedule Foreclosure Sale, in which the amount of **LUJAN**'s alleged indebtedness was

in excess of $20,000.00.  The Court again entered an Amended Final Judgment against

**LUJAN** for $21,196.79.  On September 05, 2017, Attorney **SCHANDLER** scheduled a

private judicial foreclosure to take place at the subject property on the date of October 20,

2017, at 10:00 A.M., instead of on-line at *www.MiamiDade.RealForeclosure.com*.

23.    On September 05, 2017, the foreclosure sale of the subject real property was conducted in

private.  **SAMUEL R. DANZIGER**, **as Trustee of the IPI Land Trust 2017-4**, was the

sole bidder.  **SAMUEL R. DANZIGER, as Trustee of the IPI Land Trust 2017-4,**

purchased the subject real property for $100.00; the property is believed to have a fair

market value of over $400,000.00, and **LUJAN** owned it free and clear.  **SAMUEL R.**

**DANZIGER, as Trustee of the IPI Land Trust 2017-4**, as the sole and winning bidder at the private sale, paid the amount of only $100.00, as consideration for the subject real property.  The amount of said purchase price is less than the amount of the Amended Final Judgment that **AVENTURA ISLE** obtained against **LUJAN** in the underlying Miami-Dade County Court case (# 2016-019170-CC-23).  Moreover, **AVENTURA ISLE,** by its counsel, **BROUGH, CHADROW & LEVINE, P.A.**, has recorded a Claim of Lien against **SAMUEL R. DANZIGER, as Trustee of the IPI Land Trust 2017-4**, as Owner of the subject real property for Unpaid Maintenance Assessments due @$1,196.92, Per Quarter, (01/01/18, 04/01/18), Unpaid Special Assessment, Late Charges and Interest Charges.  This Claim of Lien was recorded on June 26, 2018, in the Official Public Records of Miami-Dade County, at BOOK 31029 PAGE 2713.  A true and correct copy is attached as " Plaintiff's Exhibit # 9".

24.  At the time of the private judicial sale of the subject property, Attorney **SCHANDLER** represented both **AVENTURA ISLE** and  **SAMUEL R. DANZIGER** in different legal proceedings, including, but not limited to, county court-level lawsuits to foreclose liens against property owners brought by **SAMUEL R. DANZIGER** as trustee of various Land Trusts formed and operating in Miami-Dade County.

25.  On November 09, 2017, **SAMUEL R. DANZIGER**, as the Assignee of **AVENTURA ISLE** and substituted party plaintiff in the Miami-Dade County Court case (# 2016-019170-CC-23), caused the court to enter a Writ of Possession against **LUJAN** and thereby divest **LUJAN** of his personalty and other assets that were in the subject real property and that are worth thousands of dollars.

26. On March 15, 2018, the Court entered an Order directing the Clerk of Court to Issue

Corrected Certification of Title to **SAMUEL R. DANZIGER**, **as Trustee of the IPI**

**Land Trust 2017-4**.

**COUNT I**
**QUIET TITLE ACTION AGAINST SAMUEL R. DANZIGER, AS TRUSTEE OF THE**
**IPI LAND TRUST 2017-4 & IPI LAND TRUST 2017-4**

Plaintiff, **LUJAN**, sues Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF**

**THE IPI LAND TRUST 2017-4**, and  **IPI LAND TRUST 2017-4**, and alleges:

27. Plaintiff  re-alleges paragraph 1 through 4 and 8 through 26, inclusive, as if fully set forth

herein.

28. This is an action to quiet title to real property owned by Plaintiff, **LUJAN**, in fee simple,

and located at 662 NE 191 Terrace, Miami, FL 33179, and is more fully described as

follows:

**Lot 11, Block 37 of CHAMPION LAKES, According to the Plat thereof,**
**as recorded in Plat Book 169, Page 71 of the Public Records Of Miami-Dade**
**County, Florida**

29. Plaintiff's title to the above-described property is derived as follows:  By Special

Warranty Deed dated June 16, 2014, **ELDER LUJAN**, purchased the subject property

from the original developer, Williams Island Ventures, LLC, a Delaware Limited

Liability Company.  The Special Warranty Deed is recorded in OR BK 29223, PG 0074-

75 of the Public Records of Miami-Dade County, Florida. (See Exhibit 1).

30. Plaintiff is a citizen and permanent resident of Peru, but during the course of any given

year, while on visits to Miami, Florida, Plaintiff will use as residential accommodations

the subject property located at 662 NE 191 Terrace, Miami, FL 33179.

31.     Upon information and belief, Defendant, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4,** has possession of the premises at  662 NE 191 Terrace, Miami, Florida, 33179.

32.     Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and  **IPI LAND TRUST 2017-4**, claim title by virtue of a scam that resulted in the Clerk issued of Court issued a Certificate of Title to the above-described property adverse to Plaintiff, **LUJAN**.

33.     The claim of the Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and **IPI LAND TRUST 2017-4**, is without any legal validity, and Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and **IPI LAND TRUST 2017-4**, have no estate, right, title, lien or interest whatever in or to the land or any part of the land.

34.     Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4,** and **IPI LAND TRUST 2017-4**, are attempting to base their claim to the above-described property on a Certificate of Title issued to Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and  **IPI LAND TRUST 2017-4**, by the Honorable Harvey Ruvin, Clerk of Courts, Miami-Dade County, Florida, dated November 07, 2017, and as recorded on November 13, 2017, in the Public Records of Miami-Dade County, Florida, at OR BK 30753 Pg 2932.

35.     By way of background, on September 26, 2016, **AVENTURA ISLE**, caused a Claim Of Lien to be filed against the **LUJAN**'s real property in Miami-Dade County Public Records in OR BK 30243, Page 3434.  The amount of the lien was $3,111.42.  Said

Claim of Lien purported to show **LUJAN** owed monies to **AVENTURA ISLE,**

including, but not limited to, Maintenance Assessments that were due for two (2)

quarters: the quarter starting April 01, 2016, and the other quarter, starting September 01,

2016.  (See Exhibit 3).

36.     On November 11, 2016, **AVENTURA ISLE**, filed in Miami-Dade County Court/Civil

Division, a complaint for foreclosure of lien against **LUJAN**, which case was assigned

case number, "2016-019170-CC-23".  While the foreclosure case was pending, Plaintiff

**LUJAN** called **AVENTURA ISLE's** management to inquire about the amount owed by

him to **AVENTURA ISLE** for maintenance assessments dues, interest, late charges,

interest, attorney fees and suit costs.  At that time, **AVENTURA ISLE** made oral

representations to **LUJAN** that the amount owed to bring his account current was

$6,542.35.   On February 14, 2017, Plaintiff sent an E-check for $6,542.35, the amount

told by **AVENTURA ISLE**, that was due in order to bring his account current by paying

and satisfying all of his account arreage.  **AVENTURA ISLE** accepted **LUJAN**'s E-

check for $6,542.35, and it also fully negotiated and cashed **LUJAN**'s payment of

$6,542.35.  In fact, **AVENTURA ISLE's** payment history reflects that **LUJAN**'s account

not only was ZERO ($0.00), **LUJAN**'s account was in the black, positive with a credit, as

of February 14, 2017.  Moreover, the next maintenance payment due on **LUJAN**'s

account was on April 1, 2017. (See Exhibit 4).

37.     On February 15, 2017, **AVENTURA ISLE** filed a Notice of Action-Publication on

previously alleged grounds that it (**AVENTURA ISLE**) was unable to find or locate

**LUJAN**'s whereabouts.  Yet **AVENTURA ISLE** had received $6,542.35, from **LUJAN**

on February 14, 2017, that is, one day before **AVENTURA ISLE**'s filing Notice of

Action-Publication.  The amount received on February 14, 2017, fully satisfied balance

owed on **LUJAN**'s account. (See Exhibit 5).

38.    On April 05, 2017, again, **AVENTURA ISLE** filed a Motion for Default against **LUJAN**

when **LUJAN** did not owe any money to **AVENTURA ISLE** since the Claim of Lien

amount had been paid in full and otherwise discharged.  On April 06, 2017, the court

entered an Order of Default against **LUJAN** for failure to file or serve an Answer in the

action.  Yet, as the Order of Default was being entertained by the Court, **AVENTURA**

**ISLE** had actual knowledge that it failed to impart with the court that **LUJAN** had fully

satisfied his financial obligations with **AVENTURA ISLE**, and that there no longer was

a justiciable case or controversy between **AVENTURA ISLE** and **LUJAN** requiring the

Court's authorized decisions.  (See Exhibit 6).

39.    On April 25, 2017, **AVENTURA ISLE** filed an Affidavit of Indebtedness in the

foreclosure case when there was no debt owed by **LUJAN** to **AVENTURA ISLE**.  The

Affidavit of Indebtedness, filed by **AVENTURA ISLE**, dated 04/07/2017, clearly

showed that as of April 05, 2017, Plaintiff owed the following amounts to **AVENTURA**

**ISLE**: (See Exhibit 7).

| | | |
|---|---|---|
| 1. | Assessments good through 04/05/17 | $5,381.81 |
| 2. | Late charges through 04/05/17 | 175.00 |
| 3. | Legal ad. fees through 04/05/17 | 10.00 |
| 4. | Interest through 04/05/17 | 478.74 |

Total Amount owed by Plaintiff  $6,045.55

| | | |
|---|---|---|
| 5. | Amount Received from Defendant on 02/14/17 | ($6,542.35) |
| **6.** | **Plaintiff has a credit balance of** | **$496.80** |

Page 16 of  35

40.     On June 29, 2017, **AVENTURA ISLE**, through its attorney, **BROUGH, CHADROW,**

**& LEVINE, P.A.**, caused the court to enter a Default Final Judgment against the

**LUJAN,** .  Final Judgment entered by the Court scheduled **LUJAN**'s property to be sold

at the Judicial Foreclosure Sale scheduled on August 04, 2017.  The Notice of Judicial

Sale By The Clerk scheduled the judicial sale to be conducted by the Clerk to the highest

and best bidder for cash on-line at www.MiamiDade.RealForeclosure.com, at 09:00

o'clock, AM, on August 04, 2017.

41.     On July 31, 2017, prior to the on-line foreclosure sale by the Clerk, **BROUGH,**

**CHADROW, & LEVINE, P.A.**, was substituted by Attorney **BRAD I. SCHANDLER**,

[Hereinafter, **SCHANDLER**].  Attorney **SCHANDLER** filed a Motion to Cancel Sale

and Amend Judgment. (See Exhibit 8.)  Attorney **SCHANDLER** also filed a Stipulation

for Substitution of Counsel, which the court granted by way of order, dated 08/02/2017,

thereby releasing **BROUGH, CHADROW, & LEVINE, P.A.,** as attorney of record for

**AVENTURA ISLE**.  Moreover, in that same Stipulation of Substitution of Counsel,

Attorney **SCHANDLER** also stated that "Plaintiff (**AVENTURA ISLE**) by its assignee,

Samuel R. Danziger, as Trustee of the IPI Land Trust 2017-4, hereby consents to the

substitution of counsel specified above as required by Rule 2.060(h), Florida Rules of

Judicial Administration."  Yet, there is no Assignment of Interest from **AVENTURA**

**ISLE** appearing as being recorded in Miami-Dade County Public Records nor an

Assignment of Interest signed by **AVENTURA ISLE's** Board of Directors filed with the

Miami-Dade Clerk of Courts.

42.     On August 03, 2017, Attorney **SCHANDLER** swore out and filed an Amended Affidavit

of Indebtedness that starts: "BEFORE ME, the undersigned authority, personally

appeared BRAD I. SCHANDLER, as attorney for Plaintiff's Assignee, Samuel R

Danziger, as Trustee of the IPI Land Trust, 2017-4, etc." **SCHANDLER**'s Amended

Affidavit of Indebtedness contains information that is false.  The Amended Affidavit of

Indebtedness would be used by **SCHANDLER** to support a Motion To Amend Judgment

and Reschedule Foreclosure Sale filed on August 07, 2017.  Said motion starts by saying:

"Plaintiff, Aventura Isles Master Homeowners Association, Inc., (AIMH), by its

Assignee's undersigned counsel...", and **LUJAN**'s indebtedness amount was being

recalculated to be in excess of $20,000.00.   On August 31, 2017, the Miami-Dade

County Court again entered an Amended Final Judgment against **LUJAN** for $21,196.79,

and instead of **AVENTURA ISLE**, the Amended Final Judgment identified Plaintiff's

Assignee, to hold a lien on **LUJAN**'s property; the Assignee was **SAMUEL R.

DANZIGER**, whose address was **SCHANDLER**'s address, to wit: 4700 Sheridan Street,

Suite J, Hollywood, Florida 33021.   By using the Amended Final Judgment of

Foreclosure entered August 31, 2017, **SCHANDLER** scheduled a private judicial

foreclosure sale of **LUJAN**'S property, changing the auction location to 662 N.E. 191st

Terrace, Miami, FL 33179, (**LUJAN**'s property), instead of on-line at

www.MiamiDade.RealForeclosure.com, as originally set by the Office of the Clerk of

Miami-Dade County, pursuant to the Final Default Judgment of Foreclosure entered in

the case on June 29, 2017.

43.   On October 20, 2017, the foreclosure sale of the subject real property was conducted at

662 N.E. 191st Terrace, Miami, FL 33179.  **AVENTURA ISLE**'s Assignee, Defendants,

**SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and **IPI LAND TRUST 2017-4**, were the sole bidder.  Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and  **IPI LAND TRUST 2017-4,** purchased the subject real property, which is worth over $300,000.00, and on which **LUJAN** carried no mortgage.  Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and **IPI LAND TRUST 2017-4**, as the sole and winning bidder, paid the amount of only $100.00, as consideration for the subject real property.  The amount of said purchase price is less than the amount of the Amended Final Judgment that **AVENTURA ISLE** obtained against **LUJAN** in the underlying Miami-Dade County Court case (case # 2016-019170-CC-23).

44.   At the time of the private judicial sale of the subject property, Attorney **SCHANDLER** represented both **AVENTURA ISLE** and  **SAMUEL R. DANZIGER** in different legal proceedings, including, but not limited to, county court-level lawsuits to foreclose liens against property owners brought by **SAMUEL R. DANZIGER** as a Trustee of various Land Trusts formed and operating in Miami-Dade County.

45.   On November 09, 2017, **SAMUEL R. DANZIGER**, as the Assignee of **AVENTURA ISLE** and as substituted plaintiff in the Miami-Dade County Court case (# 2016-019170-CC-23), caused the court to enter a Writ of Possession against **LUJAN** and thereby divested **LUJAN** of his personalty and other assets that were in the subject real property and that are worth thousands of dollars.

46.   On March 15, 2018, the Court entered an Order directing the Clerk of Court to Issue Corrected Certificate of Title to Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE**

**OF THE IPI LAND TRUST 2017-4**, and  **IPI LAND TRUST 2017-4**.

47.      Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and **IPI LAND TRUST 2017-4**, claim sole ownership of the subject real property, and the recorded Certificate of Title  constitutes a cloud on Plaintiff **LUJAN**'s title to the property.

48.      Plaintiff **LUJAN** demands a jury trial in the above-entitled action.

**WHEREFORE**, Plaintiff, **ELDER LUJAN**, requests judgment against Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and  **IPI LAND TRUST 2017-4**, *CANCELLING* the Certificate of Title issued to Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and **IPI LAND TRUST 2017-4** by the Honorable Harvey Ruvin, Clerk of Courts, Miami-Dade County, Florida, dated November 07, 2017, and as recorded on November 13, 2017, in the Public Records of Miami-Dade County, Florida, at OR BK 30753 Pg 2932; GRANTING exclusive possession of the property to Plaintiff, **ELDER LUJAN**; *QUIETING TITLE* to the property in Plaintiff, **ELDER LUJAN**, as against Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and  **IPI LAND TRUST 2017-4**, and all persons and/or entities claiming under Defendant **IPI LAND TRUST 2017-4**; and *AWARDING* Plaintiff, **ELDER LUJAN**, costs of this action, and such other relief as the court may deem proper.

## COUNT II
## CANCELLATION OF CERTIFICATE OF TITLE

Plaintiff, **LUJAN**, sues Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and  **IPI LAND TRUST 2017-4**, and alleges:

49.   Plaintiff re-alleges paragraph 1 through 4 and 8 through 26, inclusive, as if fully set forth herein.

50.   Plaintiff is asking this Court to cancel the purported Certificate of Sale, dated 10/20/2017, as well as a Certificate of Title, dated 11/07/2017, and the later Corrected Certificate of Title date March 15, 2018,by and from the Office of the Honorable Harvey Ruvin, as Clerk of Miami-Dade Courts, to and in favor of the Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and **IPI LAND TRUST 2017-4**.  Said Certificate of Title is  recorded in the Official Records Book of Miami-Dade County, Florida, at OR BK 30753, PG 2932.

51.   The Certificate of Sale and Certificate of Title are wrongfully procured instruments, which are rendered void and inoperable as instruments of valid conveyance, since both are products of intentional misrepresentations and/or omissions of material fact by Defendants, **AVENTURA ISLE, SAMUEL R. DANZIGER,  BROUGH, CHADROW & LEVINE** and **SCHANDLER**, against **LUJAN** in order to obtain his real property that Plaintiff  owns free and clear.

52.    **BROUGH, CHADROW & LEVINE** has actual knowledge that Plaintiff, **LUJAN**, owns the property free and clear of any mortgage on the date that it (**BROUGH, CHADROW & LEVIN)** filed and prosecuted on **AVENTURA ISLE**'s behalf a motion of default final judgment against **LUJAN** in the Miami-Dade County Court which action consisted of misrepresentations and/or omissions of material fact.  In furtherance of the conspiracy to deprive **LUJA**N his real property, Attorney **SCHANDLER**, who also knew of Defendant **SAMUEL R. DANZIGER**'s intentions when Attorney **SCHANDLER**

filed **AVENTURA ISLE**'s Motion for Substitution of Counsel and petitioned the court

in the Miami-Dade County Case to reschedule judicial sale.

53.     Prior to the hearing on **AVENTURA ISLE**'s Motion for Final Default Judgment in the

Miami-Dade County case, **AVENTURA ISLE** and/or it attorney, **BROUGH,**

**CHADROW & LEVINE,** had knowledge that Plaintiff **LUJAN** had made overpayment

to **AVENTURA ISLE** to satisfy and otherwise discharge **AVENTURA ISLE**'s Claim of

Lien that was the subject of the Miami-Dade County Court lien foreclosure case.  Despite

such knowledge that the Claim of Lien was now paid, satisfied and discharged,

**AVENTURA ISLE**, by and through its attorney, **BROUGH, CHADROW & LEVINE,**

filed and prosecuted a motion for default final judgment which was allegedly supported

by **AVENTURA ISLE**'s Affidavit of Indebtedness that was sworn out by its custodian of

it books.  Said Affidavit of Indebtedness showed that **LUJAN'S** overpayment to

**AVENTURA ISLE** on February 14, 2017, had brought his account to zero and also

created a surplus.  Yet, **AVENTURA ISLE**, by and through its attorney, **BROUGH,**

**CHADROW & LEVINE,** misled the court that **LUJAN** was still in default for

nonpayment of the Claim of Lien amount.

54.     Defendant, **SCHANDLER**, then the attorney for **AVENTURA ISLE**, was also the

personal attorney of co-Defendant **SAMUEL R. DANZIGER**, who was a plaintiff in

different legal proceedings, including, but not limited to, county court-level lawsuits to

foreclose liens against property owners brought by **SAMUEL R. DANZIGER** as a

Trustee of various Land Trusts formed and operating in Miami-Dade County.  Defendant,

**SAMUEL R. DANZIGER**, claimed to have had an Assignment of Interest from

**AVENTURA ISLE**'s Board of Directors, yet there was no Assignment of Interest from

**AVENTURA ISLE** filed with the Miami-Dade County Court.  Furthermore, there is no

evidence in the record of the county court case or in the public records that **SAMUEL R.**

**DANZIGER** paid any consideration to **AVENTURA ISLE** for that Assignment of

Interest which was the mechanism by which **DANZIGER** was the party plaintiff

substituted for **AVENTURA ISLE** in the lien foreclosure case against **LUJAN**.

55.    To effectuate the conspiracy **SCHANDLER**, as attorney for **AVENTURA ISLE**,

through the use of varied filings made in the Miami Dade County Court case, orchestrated

a private foreclosure action at the property location and by-passed the process of having

an on-line auction at www.MiamiDade.RealForeclosure.com.  At the private sale,

**SAMUEL DANZIGER AS THE TRUSTEE FOR THE IPI LAND TRUST 2017-4**,

was able to purchase **LUJAN**'s real property for only $100.00.  Since **LUJAN** owned

said property free and clear, the price of $100.00, as paid at the private sale, clearly falls

way below fair and reasonable market value.  The subject real property is valued well

over $300,000.00, and had no mortgage lien or encumbrance.  **SCHANDLER** as the

attorney for **AVENTURA ISLE** knew that **LUJAN**'s property had no mortgage on it and

was fully aware that **LUJAN**, as the record title owner of the property, was a citizen of

and domiciled in Peru.  **SAMUEL DANZIGER** who is **SCHANDLER**'s client also

knew that the subject property had no mortgage on it.

56.    As the result of the conspiracy between **SAMUEL DANZIGER** and **SCHANDLER**,

Plaintiff **LUJAN** has suffered and will continue to suffer a total loss and deprivation of

his real property by the operation of the Certificate of Sale and Certificate of Title if these

instruments of conveyance are not cancelled.

57.     The Certificate of Sale and Certificate of Title must be cancelled as they are a product of

fraud, concealment, misrepresentations and/or omissions of truth and fact.  Assignor,

**AVENTURA ISLE**, received no consideration in exchange for the Assignment of

Interest in the Claim of Lien foreclosure lawsuit it filed against **LUJAN** in Miami-Dade

County Court.

**WHEREFORE**, Plaintiff, **ELDER LUJAN**, prays for a Judgment against Defendants,

**SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4 & IPI LAND**

**TRUST 2017-4**, as follows:

a.      For a Judgment Cancelling the Amended Certificate of Title dated March 16,

2018, recorded at OR BK 30899, PG 307 in the Public Records of Miami-Dade

County, Florida;

b.      For a Judgment Cancelling the Certificate of Sale dated October 20, 2017;

c.      For a Judgment Vacating the Final Judgment entered by the Miami-Dade County

Court in Case Number 16-19170-CC-23(03), on June 29, 2017, and all subsequent

Amendments to that Final Judgment.

d.      For a Judgment Awarding costs and attorney's fees against Defendants,

**SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-**

**4 & IPI LAND TRUST 2017-4**, as incurred by Plaintiff in this action; and for

such further relief this Court deems just and proper.

### COUNT III
### CONVERSION AGAINST SAMUEL R. DANZIGER AS TRUSTEE OF THE IPI LAND TRUST 2017-4; THE IPI LAND TRUST 2017; AND AVENTURA ISLE

Plaintiff, **LUJAN**, sues Defendants, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, **IPI LAND TRUST 2017-4**, and **AVENTURA ISLE** and alleges:

58. Plaintiff re-alleges paragraph 1 through 5 and 8 through 26, inclusive, as if fully set forth herein.

59. By Special Warranty Deed dated June 16, 2014, Plaintiff, **LUJAN**, purchased the subject property from the original developer, Williams Island Ventures, LLC, a Delaware Limited Liability Company.  The Special Warranty Deed is recorded in OR BK 29223, PG 0074-75 of the Public Records of Miami-Dade County, Florida.  Plaintiff **LUJAN** purchased said real property cash and the property did not have any mortgage on it at the time **AVENTURA ISLE** commenced the foreclosure proceedings against the Plaintiff **LUJAN** in the Miami-Dade County Court.  (See Exhibit 1).

60. At all times material, **LUJAN** was the fee simple owner of the subject property.  Plaintiff is also a citizen and resident of Peru.  Plaintiff **LUJAN** uses the subject real property as a vacation home during his frequent visits to Florida.

61. Plaintiff **LUJAN** fully satisfied the amount of the Claim of Lien and brought his account current by making an overpayment to **AVENTURA ISLE** on February 14, 2017, which overpayment was cashed and accepted by **AVENTURA ISLE**.  Depiste the fact that **LUJAN** discharged and satisfied the Claim of Lien, Defendant, **AVENTURA ISLE**, caused the court to enter a Final Default Summary Judgment against **LUJAN** on June 29,

2017, which resulted in **LUJAN**'s real property being sold at a private auction to co-Defendant, **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4 & IPI LAND TRUST 2017-4** for the sum of $100.00.  Co-Defendant, **AVENTURA ISLE**, went on to get a Writ of Possession and had removed all of Plaintiff's personal property from the subject real property.  **LUJAN**'s personal property cost several thousand dollars.

62.   In the Stipulation For Substitution of Counsel filed on July 31, 2017, in the Miami-Dade County Court case, **AVENTURA ISLE** states that its assignee is **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**.  As Assignor of Interest, **AVENTURA ISLE** did not receive any consideration from **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**.  Despite receiving no consideration from **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, Defendant **AVENTURA ISLE** remained silent and allowed them to collude and conspire in the taking of Plaintiff's real property for only $100.00 and to convert for themselves Plaintiff's personal property valued in excess of several thousand dollars.

63.    By the time that Plaintiff learned of the conversion of his real property and his personal property, **LUJAN**'s demand for their return would have been fruitless because Defendants **SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4, IPI LAND TRUST 2017-4**, and **AVENTURA ISLE** were no longer in possession of the items.

64.   Plaintiff **LUJAN** has been damaged by Defendants **SAMUEL R. DANZIGER, AS**

**TRUSTEE OF THE IPI LAND TRUST 2017-4 & IPI LAND TRUST 2017-4**,

**AVENTURA ISLE**'s wrongful deprivation of his rights to his real property and to his

personal property.

WHEREFORE, Plaintiff, **ELDER LUJAN** demands Judgment against Defendants,

**SAMUEL R. DANZIGER, AS TRUSTEE OF THE IPI LAND TRUST 2017-4 & IPI LAND**

**TRUST 2017-4**, **AVENTURA ISLE** for damages, and any further relief that this Court deems

just and proper.

### COUNT IV
### CONSTRUCTIVE FRAUD AGAINST AVENTURA ISLE & BROUGH CHADROW & LEVINE

Plaintiff, **LUJAN**, sues Defendants, **AVENTURA ISLE**, and **BROUGH CHADROW**

**& LEVINE**, and alleges:

65.     Plaintiff  re-alleges paragraph 1 through 3, 5, 5 through 26, inclusive, as if fully set forth

herein.

66.     Plaintiff **LUJAN** is a member of **AVENTURA ISLE** by virtue of his ownership of the

subject real property that is within and a part of the community.

67.     Plaintiff called **AVENTURA ISLE** from Peru to inquire about the amount that he owed

**AVENTURA ISLE** so that he could bring his homeowner member account to a current

status.  **AVENTURA ISLE** gave **LUJAN** an amount certain that needed to be paid and

**LUJAN** paid said debt via ACH while he was in Peru.  At the time that Plaintiff **LUJAN**

called **AVENTURA ISLE**, the Claim of Lien foreclosure lawsuit filed in Miami Dade

County Court had been pending for several months.  **AVENTURA ISLE** purposefully

failed to advise **LUJAN** that his real property was in lien foreclosure litigation

proceedings and that **AVENTURA ISLE** could not accept money from him.  Instead,

**AVENTURA ISLE** quoted **LUJAN** a specific amount that **LUJAN** needed to pay in

order to bring his account to a zero balance.  **LUJAN** sent the amount that **AVENTURA**

**ISLE** told him was due and owing, all the while believing **AVENTURA ISLE**'s

statements and representations that by **LUJAN**'s payment of the amount quoted him, his

account would be clear and in good standing.

68.     Despite **LUJAN'S** payment of the Claim of Lien amount, Defendant, **AVENTURA**

**ISLE**, through its attorneys,  **BROUGH CHADROW & LEVINE**, intentionally sought

to deprive **LUJAN** of his real property by filing and prosecuting a motion for default final

judgment in April 2017, even though **LUJAN** had paid and otherwise satisfied the Claim

of Lien as of February 14, 2017.  Moreover, **AVENTURA ISLE** and **BROUGH**

**CHADROW & LEVINE**, knew how to contact **LUJAN** and also knew that **LUJAN**

was not concealing his whereabouts since **LUJAN** and **AVENTURA ISLE** had spoken

telephonically concerning the amount owed by **LUJAN** and the receipt of **LUJAN**'s

payment within 24 hours of that telephone conversation.

69.     **AVENTURA ISLE**'s attorney,  **BROUGH CHADROW & LEVINE**, colluded with

**SCHANDLER** to do a Stipulation for Substitution of Counsel which was filed with the

Miami Dade County Court on July 31, 2017.   In said Stipulation for Substitution of

Counsel, signed by both **SCHANDLER** and **BROUGH CHADROW & LEVINE**, an

Assignment of Interest by **AVENTURA ISLE** in favor of **DANZIGER** was in effect

created even though the Assignment of Interest is only mentioned therein.  Yet, despite

said reference, there is no Assignment of Interest on record with the Miami Dade County

Court and there is no evidence that **AVENTURA ISLE** received any consideration from

**DANZIGER** for **AVENTURA ISLE**'s assignment of its rights to **DANZIGER**.

Furthermore, it is uncommon for a Homeowners Association to assign its legal rights and

interests to an unrelated third party entity to foreclose on one of its members.  **BROUGH**

**CHADROW & LEVINE** signed off on the Stipulation for Substitution of Counsel in

which **AVENTURA ISLE** was substituted as the plaintiff by the Assignee, **SAMUEL R.**

**DANZIGER**.

70.    Defendants, **BROUGH CHADROW & LEVINE, SCHANDLER** and **AVENTURA**

**ISLE,** utilized the Stipulation for Substitution of Counsel as a mechanism to do a

substitution of party plaintiff even though Defendants knew at all relevant times that the

purported Assignor (**AVENTURA ISLE**) did not receive any consideration from the

Assignee (**DANZIGER**) and despite this knowledge, **AVENTURA ISLE** remained in

silence.  By remaining silent to the Assignment of Interest between **AVENTURA ISLE**

and **DANZIGER**, that was executed by its attorney, **BROUGH CHADROW &**

**LEVINE,** Defendant, **AVENTURA ISLE** played a part in the perpetuation of the fraud

against **LUJAN**.

71.    Both **BROUGH, CHADROW & LEVINE** and **AVENTURA ISLE** engaged in

fraudulent conduct, both of omission and commission.

72.    Defendant, **BROUGH CHADROW & LEVINE** substantially assisted, encouraged and

further instigated **AVENTURA ISLE** 's constructive fraud.  By means of the Stipulation

for Substitution of Counsel embedded with the Assignment of Interest language in it, the

Miami Dade County Court to entered an Amended Final Judgment and other Orders that

ultimately resulted in the issuance by the Clerk of the Miami Dade County Court of an

Amended Certificate of Title to **SAMUEL R. DANZIGER**, as opposed to the original

Plaintiff, **AVENTURA ISLE**.

73.     Plaintiff **LUJAN** has been damaged by Defendants **BROUGH, CHADROW &**

**LEVINE** and **AVENTURA ISLE**'s constructive fraud.

        WHEREFORE, Plaintiff, **ELDER LUJAN**, prays for a judgment against Defendants,

**AVENTURA ISLE** and **BROUGH CHADROW & LEVINE** for actual damages, interest,

costs, reasonable attorney's fees and any further relief this Court deems just and proper.

**COUNT V**
**AIDING AND ABETTING CONSTRUCTIVE FRAUD**
**AGAINST BROUGH, CHADROW & LEVINE, SCHANDLER and AVENTURA ISLE**

74.     Plaintiff  re-alleges paragraph 1 through 3, 5 through 26, inclusive, as if fully set forth

        herein.

75.     On November 11, 2016, Defendant **AVENTURA ISLE** filed a lien foreclosure lawsuit

        against Plaintiff **LUJAN** based on delinquent assessments.  **BROUGH, CHADROW &**

        **LEVINE** as counsel for **AVENTURA ISLE** filed the lawsuit on its client's behalf based

        on **AVENTURA ISLE's** Claim of Lien against **LUJAN**'s real property dated September

        16, 2016. The Claim of Lien itself was prepared by **BROUGH, CHADROW &**

        **LEVINE**.

76.     On or before February 13, 2017, **LUJAN** called **AVENTURA ISLE** to inquire as to the

        amount that he owed so that he could pay his debt to **AVENTURA ISLE**.  **AVENTURA**

        **ISLE** told Plaintiff **LUJAN** that it was necessary for him to pay a sum certain and that

        payment of that exact amount was needed in order for **LUJAN** to bring his account

current with **AVENTURA ISLE**.  On February 14, 2017, LUJAN made a payment via E-check for $6,542.35, which check was fully negotiated by **AVENTURA ISLE** who acknowledged receipt of the payment and kept the check proceeds.

77.   Despite **LUJAN**'s bringing his account current, Defendant, **AVENTURA ISLE** through its attorney, **BROUGH, CHADROW & LEVINE**, filed a motion for final default judgment on April 25, 2017.   Through its attorney, **AVENTURA ISLE** also filed an Affidavit of Indebtedness in support.  **AVENTURA ISLE**'s Affidavit of Indebtedness clearly showed that **LUJAN** had a surplus in his account at the time that **AVENTURA ISLE** moved for final default judgment.  (See Exhibit ___).

78.   Thereafter, **AVENTURA ISLE** permitted **BROUGH, CHADROW & LEVINE** to be substituted as its counsel by **SCHANDLER**.  In the Stipulation for Substitution of Counsel, **SCHANDLER**, as **AVENTURA ISLE**'s new counsel, reference is made that that there was an assignment of interest from **AVENTURA ISLE**, to then new party plaintiff, Samuel R. Danziger as Trustee of the IPI Land Trust 2017-4.  **BROUGH, CHADROW & LEVINE**'s execution of the Stipulation for Substitution of Counsel, was evidence that **BROUGH, CHADROW & LEVINE**  had no purpose but to deprive Plaintiff of his rightful ownership interest in the subject real property since there is no recorded Assignment of Interest by **AVENTURA ISLE** and **AVENTURA ISLE** was paid nominal or no consideration for said assignment of interest even though the Amended Final Judgment entered against **LUJAN** in the Miami Dade County Court case was in excess of $21,000.00.

79.   **SCHANDLER**, acting at all times within the scope of his employment and/or agency as

attorney for **AVENTURA ISLE**, intentionally sought to deprive Plaintiff of his interest in the subject real property by colluding and conspiring with **AVENTURA ISLE** and **BROUGH, CHADROW & LEVINE** when **SCHANDLER** caused a substitution of the party plaintiff in the Miami-Dade County Court case.

80.   **BROUGH, CHADROW & LEVINE** and **SCHANDLER**, who were acting at all time within the scope of employment and/or agency as the attorney for **AVENTURA ISLE**, knew that there was no Assignment of Interest from **AVENTURA ISLE** to **SAMUEL R. DANZIGER** and furthermore, that **AVENTURA ISLE** received nominal or no consideration for the alleged assignment of interest.

81.   **AVENTURA ISLE** perpetrated a constructive fraud against **LUJAN** by allowing **BROUGH, CHADROW & LEVINE**, **SCHANDLE**R and **SAMUEL R. DANZIGER** to orchestrate a scam which resulted in **SAMUEL R. DANZIGER's** purchase of Plaintiff's subject real property for $100.00, despite the fact that the fair market value of **LUJAN**'s real property is over $300,000.00.   Furthermore, the fraud continued when **SCHANDLER** on behalf of **SAMUEL R. DANZIGER** went on to get a Writ of Possession from the Clerk of the Miami Dade County Court which was executed and divested Plaintiff of ownership of personal property contained inside **LUJAN**'s home. The personal property in the subject house is valued at over several thousands of dollars.

82.   Defendant, **SCHANDLER** substantially assisted, encouraged and further instigated, **AVENTURA ISLE** 's fraudulent conduct when **SCHANDLER**, as attorney for **SAMUEL R. DANZIGER**, caused the Miami Dade County Court to enter an Amended Final Judgment and other orders and the Clerk of Court to issue an Amended Certificate

of Sale to **SAMUEL R. DANZIGER** as the Trustee of the IPI Land Trust 2017-14, and

not the original plaintiff in the lien foreclosure case, to wit:  **AVENTURA ISLE**.

83.    The actions of **SCHANDLER** throughout the Miami-Dade County Court case serve as

the prime, though not sole, indicator of **SCHANDLER**'s aiding and abetting **SAMUEL**

**R. DANZIGER'**s constructive fraud against the Plaintiff.

84.    Plaintiff has been damaged by the actions of **BROUGH, CHADROW & LEVINE**,

**SCHANDLER** and **AVENTURA ISLE**, such damages include deprivation of his

ownership interest in the subject real property, his personal property inside the subject

real property and additional expenditures, including, but not limited to, attorney fees and

costs necessitated by the preparation and filing of this lawsuit.

WHEREFORE, Plaintiff, **ELDER LUJAN**, prays for a Judgment against Defendants,

**AVENTURA ISLE**,  **BROUGH CHADROW & LEVINE**, and **SCHANDLER** for actual

damages, interest, costs, reasonable attorney's fees and any further relief this Court deems just

and proper.

## <u>COUNT VI</u>
<u>CIVIL CONSPIRACY AGAINST ALL DEFENDANTS</u>

85.    Plaintiff  re-alleges paragraph 1 through 26, inclusive, as if fully set forth herein.

86.    **AVENTURA ISLE**,  **BROUGH CHADROW & LEVINE**, and **SCHANDLER** acted

in concert and conspired with **SAMUEL R. DANZIGER** to deprive Plaintiff of his

ownership interest in the subject property.

87.    **SCHANDLER**, acting at all time within the scope of his employment and/or agency as

the foreclosure attorney for **AVENTURA ISLE**, intentionally and maliciously sought to

deprive Plaintiff of his interest in the subject property by colluding and conspiring with **SAMUEL R. DANZIGER** to file court papers that effectuated a change as to the party plaintiff in the foreclosure case based on a "ghost" Assignment of Interest which was never filed with the court in the foreclosure case. **SCHANDLER** was also counsel to **SAMUEL R. DANZIGER** in other lien foreclosure cases and other litigation at the same that **SCHANDLER** was representing **AVENTURA ISLE**, in the foreclosure case against Plaintiff.

88.    At all relevant times, **SCHANDLER**, acting within the scope of his employment and/or agency as the foreclosure attorney for **AVENTURA ISLE**, knew that there was assignment of interest by **AVENTURA ISLE**, when **BROUGH CHADROW & LEVINE** and **SCHANDLER** jointly executed and filed a Stipulation for Substitution of Counsel that was embedded with language that substituted the party plaintiff in the foreclosure case from **AVENTURA ISLE** to **SAMUEL R. DANZIGER**. **SCHANDLER** and **BROUGH CHADROW & LEVINE** also knew **that SAMUEL R. DANZIGER** did not pay any true and valuable consideration to **AVENTURA ISLE**, for the alleged assignment of interest from **AVENTURA ISLE**, to **SAMUEL R. DANZIGER**. Thus, **SAMUEL R. DANZIGER** has no valid ownership interest because it did not pay any consideration to **AVENTURA ISLE**, for the substitution of party plaintiff and/or for the Assignment of Interest, which indicate fraud or fraudulent intent. The transfer of ownership of **LUJAN**'s real property and personalty through the means employed by the Defendants is null and void.

89.    Plaintiff has been damaged by the actions of Defendants, **AVENTURA ISLE**,

**BROUGH CHADROW & LEVINE**, **SCHANDLER** and **SAMUEL R. DANZIGER**.

Such damages include deprivation of his ownership interest in the subject property, personal property inside the subject property, and additional expenditures, including, but not limited to, attorney fees and costs necessitated by the preparation and filing of this lawsuit.

WHEREFORE, Plaintiff, **ELDER LUJAN**, prays for a Judgment against Defendants,

**AVENTURA ISLES MASTER HOMEOWNER ASSOCIATION, INC.**, **BROUGH CHADROW & LEVINE**, **SCHANDLER, BRAD SCHANDLER,  SAMUEL R. DANZIGER AS TRUSTEE OF THE IPI LAND TRUST 2017-4**, and **THE IPI LAND TRUST 2017-4**, for damages, interest, costs, reasonable attorney's fees, and any further relief this Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff, ELDER LUJAN, requests a trial by jury on all issues so triable as a matter of right.

/s/
JAMES JEAN-FRANCOIS, ESQ.
Fla. Bar. No.: 0495115
Law Offices of James Jean-Francois, P.A.
6100 Hollywood Blvd, Ste. 211
Hollywood, FL  33024
P: (954) 987-8832; F: (954) 987-2622
e-mail: *jamesjeanfrancoisesq@hotmail.com*
        *jjonlaw@hotmail.com*

# Exhibit "C"

United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Elder Lujan, Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 18-22617-Civ-Scola |
| | ) | |
| Samuel R. Danziger, and others, | ) | |
| Defendants. | ) | |

**Omnibus Order on Motions to Dismiss**

This case arises from events occurring in a Florida state court foreclosure proceeding and the ensuing sale of certain real property in Aventura, Florida (the "Subject Property") once legally owned by Plaintiff Elder Lujan ("Lujan"). Lujan asserts a variety of state law property and tort claims seeking reclamation of the Subject Property and damages. (Compl., ECF No. 1.)

Now before the Court are motions to dismiss filed by Defendants Brough, Chadrow & Levine, P.A. ("BCL," ECF No. 8), Aventura Isle Master Homeowners Association, Inc. ("AIMHA," ECF No. 12), Samuel Danziger ("Danziger") and IPI Land Trust 2017-14 ("Trust") (ECF No. 15), and Brad I. Schandler ("Schandler," ECF No. 34) (BCL, AIMHA, Danziger, Trust and Schandler, collectively, the "Defendants"). Danziger and the Trust separately moved to dismiss under the *Colorado River* and *Younger* abstention doctrines. (ECF No. 22.)[1] Having reviewed the parties' submissions and the relevant law, the Court **grants in part** the motion to abstain, (ECF No. 22), **dismisses** Counts I and II without prejudice and **stays** Counts III through VI pending final resolution of the underlying state court foreclosure action.

### 1. Factual Background

The following is a summary of the Complaint's factual allegations, which the Court accepts as true in reviewing the Defendants' motions to dismiss.

On June 16, 2014, Lujan, a citizen and permanent resident of Peru, (Compl. at ¶¶ 3, 30), purchased a warranty deed in the Subject Property, which he intended to use as a vacation home. (*Id.* at ¶ 11.) The purchase price was approximately $300,000 and Lujan paid in cash without financing. (*Id.*)

---

[1]    BCL and AIMHA conditionally joined this motion, (ECF Nos. 24-25), and Schandler's motion to dismiss raises the same abstention arguments. (ECF No. 34.)

Lujan owed AIMHA, the homeowners association for the Subject Property, $3,111.42 in maintenance assessments for quarters beginning in April and September 2016. (*Id.* at ¶ 13.) On September 26, 2016, AIMHA filed a Claim of Lien against the Subject Property in the Miami-Dade County Public Records. (*Id.*)

A month and a half later, on November 11, 2016, AIMHA and its attorney, BCL, filed a foreclosure complaint in Miami-Dade County Court seeking satisfaction of its Claim of Lien (the "State Case," case no. 16-019170 CC (23)(03)). (*Id.* at ¶ 10, 14.) Lujan was not personally served in the State Case, (ECF No. 1-8), but nonetheless contacted AIMHA after filing to determine the amount he owed for maintenance assessment, interest and late charges on the Subject Property. (*Id.* at ¶ 15.) AIMHA misrepresented and omitted a number of facts during that conversation relating to the amount owed and the existence of the State Case. (*Id.* ("[AIMHA] misrepresented to Lujan that his account was in collection status instead of in actual litigation" in the State Case).) In reliance on that conversation, Lujan remitted a check for $6,542.35 on February 14, 2017, which AIMHA accepted and cashed, thereby satisfying the Claim of Lien. (*Id.* at ¶ 16; ECF No. 1-4.) AIMHA, however, did not dismiss the State Case.

Instead, the next day, on February 15, 2017, AIMHA filed a Notice of Action in the State Case, which sought to serve Lujan by publication and represented that Lujan's location could not be determined. (Compl. at ¶ 17; ECF No. 1-5.) The notice made no mention of AIMHA's prior conversation with Lujan or Lujan's satisfaction of the Claim of Lien, and warned that his failure to respond would result in the entry of default judgment. (ECF No. 1-5.) The notice was signed by the Miami-Dade County Clerk of Court with instructions to publish daily in a local newspaper for two consecutive weeks. (*Id.*)

When Lujan did not respond to the foreclosure complaint, on April 5, 2017, AIMHA moved *ex parte* for default judgment, which the state court entered the next day. (Compl. at ¶ 18; ECF No. 1-6.) At no point before the entry of default did AIMHA notify the state court that Lujan satisfied the debts subject to the Claim of Lien. (*Id.*)

The state court then entered final judgment for AIMHA and scheduled a judicial foreclosure sale for the Subject Property for August 4, 2017. (Compl. at ¶ 20.) Prior to the sale, AIMHA assigned its interest in the suit to the Trust, which Danziger serves as trustee, and Schandler, as the Trust's counsel, filed a motion to cancel the judicial foreclosure sale. (*Id.* at ¶ 21; ECF No. 1-8.) That motion recognized that Lujan was never personally served in the foreclosure suit. (ECF No. 1-8.) On August 7, 2017, Schandler filed another motion, this time to amend the final judgment and reschedule the foreclosure sale, alleging

that Lujan's debt actually exceeded $20,000. (Compl. at ¶ 22.) The final judgment was then amended to reflect Lujan owing $21,196.79 to Danziger, not AIMHA. (*Id.* at ¶¶ 22, 42). A private sale of the Subject Property was then ordered for October 20, 2017 at the Subject Property, and not on the county's online portal, as originally scheduled. (*Id.*)

Danziger was the sole bidder at the sale and purchased the Subject Property for $100. (*Id.* at ¶ 23.) That purchase price did not cover the amount claimed to be owed under the Claim of Lien or amended final judgment, and Lujan alleges that the fair market value of the Subject Property exceeds $400,000. (*Id.*) At the time of the sale, Schandler also represented AIMHA and Danziger, as trustee of other real estate trusts, in different legal proceedings, including other foreclosure suits in Miami-Dade County Court. (*Id.* at ¶ 24.)

Later, in November 2017, Danziger obtained a writ of possession divesting Lujan of certain personal property and assets in the Subject Property. (*Id.* at ¶ 25.) On March 15, 2018, at Danziger and the Trust's request, the county court entered an order for the issuance of a corrected certificate of title to the Subject Property in the name of Danziger, as trustee of the Trust. (*Id.* at ¶ 26.) AIMHA, through BCL, has since filed and recorded a Claim of Lien against Danziger, as trustee of the Trust, for unpaid assessments on the Subject Property from January through June 2018. (ECF No. 1-9.)

The parties' briefing reveals that on June 26, 2018, Lujan filed a motion to vacate the judgment of foreclosure in the State Case. (ECF No. 22. at 3.) Two days later, on June 28, 2018, Lujan filed this action, asserting six claims under Florida law for: (i) quiet title against Danziger and the Trust; (ii) cancellation of certificate of title against Danziger and the Trust; (iii) conversion against Danziger, the Trust and AIMHA; (iv) constructive fraud against AIMHA and BCL; (v) aiding and abetting constructive fraud against BCL, Schandler and AIMHA; and (vi) civil conspiracy against all Defendants. With the respect to the first two claims, Lujan requests an order "cancelling the certificate of title issued" by the state court to Danziger, and "vacating the Final Judgment entered by the Miami-Dade County Court" and all subsequent amendments thereto in the State Case. (Compl. at ¶¶ 48, 57 ("WHEREFORE" clause).) The latter four claims seek damages resulting from deprivations of real and personal property. (*Id.* at ¶¶ 64, 73, 84, 89.)

The parties' motions argue that dismissal is appropriate because:  (i) the Complaint insufficiently alleges diversity of parties and Lujan, therefore, fails to establish the existence of federal subject matter jurisdiction, (ECF Nos. 8, 12, 15, 34); and (ii) the Court should abstain from exercising jurisdiction under the *Colorado River* and *Younger* abstention doctrines in light of the underlying State Case, (ECF Nos. 22, 34).

**2. Discussion**

### A. The *Rooker-Feldman* Doctrine Bars Counts I and II

Counts I and II expressly request the Court to reverse the final judgment of foreclosure entered in the State Case. Specifically, Lujan's cause of action for quiet title requests the Court to "cancel[] the Certificate of Title issued to Defendants [Danziger and the Trust] by the Honorable Harvey Ruvin, Clerk of Courts" through the judicially ordered sale of the Subject Property. (Compl. at ¶ 48 ("WHEREFORE" clause).) In Count II, a claim for cancellation of certificate of title, Lujan requests that same relief, in addition to a "judgment vacating the final judgment entered" in the State Case. (*Id.* at ¶ 57 ("WHEREFORE" clause).)

The *Rooker-Feldman* doctrine is a limitation on the subject matter jurisdiction of the lower federal courts, intended "to prevent the federal courts from hearing what are essentially appeals from state court decisions." *Target Media Ps. V. Specialty Mkt. Corp.*, 881 F.3d 1279, 1284 (11th Cir. 2018). "The doctrine is rooted in an understanding that Congress has given only the United States Supreme Court the ability to hear an appeal from a state court decision." *Id.* Under clear Supreme Court precedent, the *Rooker-Feldman* doctrine "bars only that class of cases in which federal litigants seek reversal of a state court decision." *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)). Thus, in the Eleventh Circuit, claims are barred under the *Rooker-Feldman* doctrine where "asserted by parties who have lost in state court and then ask the district court, ultimately, to review and reject a state court's judgments." *Id.* at 1285-86 (citing *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009); *Exxon Mobil*, 544 U.S. at 284). Claims meet this standard where they (i) were "actually adjudicated by a state court," or (ii) are "'inextricably intertwined' with a state court judgment." *Id.* at 1286. In the latter respect, a claim is "inextricably intertwined" where it asks a federal court to "effectively nullify the state court judgment." *Id.* (quoting *Casale v. Tillman*, 558 F.3d 1258, 1261 (11th Cir. 2009)).

Here, Counts I and II are "inextricably intertwined' with a state court judgment." *Id.* Those counts not only seek to "effectively nullify" the final judgment in the State Case—they actually request the Court to vacate that final judgment and void the judicially ordered sale of the Subject Property. Thus, Counts I and II are barred by the *Rooker Feldman* doctrine, and the Court dismisses them without prejudice for lack of subject matter jurisdiction. *See Valentine v. BAC Home Loans Servs., L.P.*, 635 F. App'x 753, 757 (11th Cir. 2015) (affirming dismissal under *Rooker-Feldman* doctrine where complaint sought "an order setting aside the judgment of foreclosure"); *Symonette v.*

*Aurora Loan Servs. LLC*, 631 F. App'x 776, 777-78 (11th Cir. 2015) (holding similarly).

### B. Counts III, IV, V and VI are Stayed Under the *Colorado River* Abstention Doctrine

The Defendants' motions to abstain request the Court to dismiss the Complaint under the *Colorado River* and *Younger* abstention doctrines based on Lujan's earlier filed motion to vacate in the State Case. (ECF Nos. 22, 34.) Having dismissed Counts I and II under the *Rooker-Feldman* doctrine, *supra*, the Court only addresses the propriety of abstention for Counts III through VI.

"Federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004). In certain "exceptional circumstances," however, a federal court may abstain from exercising jurisdiction "to avoid duplicative litigation" with a parallel state court lawsuit under the *Colorado River* doctrine. *Id.*; *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). A state court proceeding is parallel, and thus may give rise to *Colorado River* abstention, where it "involve[s] substantially the same parties and substantially the same issues" as the federal suit. *Ambrosia*, 368 F.3d at 1330.

Upon a finding that cases are parallel, courts then consider six factors under the *Colorado River* analysis: (1) whether one of the courts has jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights. *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.,* 891 F.2d 882, 884 (11th Cir. 1990). No one factor is necessarily determinative and the factors are not "a mechanical checklist." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n. 20 (1983). Where *Colorado River* abstention is warranted, "a stay, not a dismissal, is the proper procedural mechanism for a district court to employ." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004); *see also Ferrer v. Bayview Loan Serv., LLC*, No. 15-20877, 2015 WL 1276540, at *3 (S.D. Fla. Aug. 27, 2015) (Scola, J.).

This case and the State Case are parallel. AIMHA and Lujan are named parties in the State Case. Further, Danziger and the Trust have actively litigated in the State Case under a purported assignment of rights from AIMHA. And Schandler and BCL, as current and former counsel of record in the State Case, are also subject to the jurisdiction of the state court for their conduct in

that forum. *Cf. Moakley v. Smallwood*, 826 So. 2d 221, 226-27 (Fla. 2002). In any event, the parties in the state and federal cases need only be "substantially the same"—not identical—and the Court finds they are here. *Ambrosia*, 368 F.3d at 1330. Further, the State Case and this case involve "substantially similar issues." *Id.* In the State Case, Lujan moves to vacate the final judgment of foreclosure for fraud, misrepresentation or other misconduct of the Defendants under Fla. R. Civ. P. 1.540(b)(3). (ECF No. 22 at p. 26.) Those same core allegations underpin Lujan's fraud and conspiracy theories here. (*Compare id. with* Compl. at ¶¶ 58-89.) While the relief sought differs in each forum— Lujan seeks to vacate the final judgment in the State Case, while pursuing money damages here—the Court cannot ignore the virtually identical factual basis for Lujan's claims in both cases. *See Willson v. Bank of Am., N.A.*, No. 15-14303, 2016 WL 8943333, *3 (May 23, 2016) (Middlebrooks, J.) (holding that a state and federal case involved substantially similar issues where "the success of *all* of Plaintiff's claims turn on the same underlying issue," notwithstanding the plaintiff seeking different relief in each forum). Accordingly, the State Case and this case are parallel.

The Court now considers the six *Colorado River* abstention factors. First, the Florida court has "assumed jurisdiction over the [Subject P]roperty," principally by ordering a judicial sale of the Subject Property following a final judgment foreclosing on it. *Ambrosia*, 368 F.3d at 1331; *Willson*, 2016 WL 8943333 at *3; *Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, No. 3:10-cv-423-J-34TEM, 2011 WL 4529604, at *8, n.13 (M.D. Fla. Sept. 30, 2011) (noting foreclosure proceedings are *quasi in-rem* under Florida law). Thus, the first factor favors abstention.

The second factor, "the inconvenience of the federal forum," weighs neither for nor against abstention. *Ambrosia*, 368 F.3d at 1331. That factor "focus[es] primarily on the physical proximity of the federal forum to the evidence and witnesses." *Id.* at 1332. Both courts and the Subject Property are located in Miami-Dade County, Florida. In light of that uniformity, the location of the parties is irrelevant, and this factor is of no consequence to the Court's abstention analysis.

Third, "the potential for piecemeal litigation" favors abstention. *Id.* at 1331. Under Eleventh Circuit precedent, this factor favors abstention only where the threat of piecemeal litigation is "abnormally excessive or deleterious," and not "run of the mill." *Id.* at 1333; *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1142 (11th Cir. 2013). Such is the case here. Both cases require determinations of whether the Defendants procured the Subject Property through fraud, misconduct or misrepresentation. The Florida court is adjudicating those issues in deciding whether to vacate its final judgment of

foreclosure. Proceeding with this case would force the Court to make findings on those same issues—issues central to the validity of the final judgment in the State Case. Principles of comity, like those expressed through the *Rooker-Feldman* doctrine, militate against federal courts interfering with a final state court judgment. Thus, the Court finds that the risks posed by piecemeal litigation in this case are abnormally deleterious and favor abstention. *See also Sergeon v. Home Loan Ctr., Inc.*, No. 3:09-cv-1113-J-32JBT, 2010 WL 5662930, at *7 (M.D. Fla. Feb. 23, 2017) ("Because this dispute primarily involves rights in Florida real estate, it is obviously deleterious, to the point of being 'abnormally' so, to have two separate courts trying to determine property rights in" the plaintiff's property).

The fourth factor, "the order in which the fora obtained jurisdiction," also favors abstention.  AIMHA initiated the State Case in November 2016, nearly two years before Lujan filed this case in June 2018. The State Case has also progressed further, having reached final judgment in June 2017. *See Ambrosia*, 368 F.3d at 1333 (explaining that the fourth factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."). Thus, the fourth factor favors abstention.

Under the fifth consideration, "whether state or federal law will be applied," Counts III through VI are tort claims under Florida law. *Id.* at 1331. Indeed, there are no federal claims involved in this case. Thus, the fifth factor favors abstention to the Florida forum.

The sixth and final factor, "the adequacy of the state court to protect the parties' rights," weighs slightly against abstention. The State Case is pending in Miami-Dade County Court, where the maximum jurisdictional threshold is $15,000. Fla. Stat. § 34.01(1)(c). Counts III through VI seek damages for wrongful deprivation of the Subject Property, the value of which is claimed to exceed both $400,000 and the county court's jurisdiction. While a transfer to the circuit court under Fla. R. Civ. P. 1.170(j) would remedy this concern, such transfer would deprive the Florida forum of the institutional knowledge that weighs in favor of abstaining in deference to it here. As a result, the Court finds the sixth factor weighs slightly against abstention.

On aggregate, the Court finds abstention is warranted under the *Colorado River* doctrine for Counts III through VI. Lujan, however, is not deprived of a remedy in this Court, and the Defendants' requests for dismissal are rejected. Instead, this Court will **stay** and **administratively close** this case pending final resolution of the State Case, including Lujan's motion to vacate the final judgment of foreclosure, (*see* ECF No. 22 at pp. 15-29). *Moorer*, 374 F.3d at 998 (holding that "a stay, not a dismissal, is the proper procedural

mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine."). At that point, if a live dispute remains, Lujan may resume prosecution of his claims in this Court.

### 3. Conclusion

In sum, the Court **grants in part** the Defendants' motion to abstain (ECF No. 22). Counts I and II of the Complaint (ECF No. 1) are **dismissed without prejudice** for lack of subject matter jurisdiction. Counts III through VI are **stayed** pending final determination of the State Case (Case No: 16-019170 CC (23)(03), Miami-Dade County Court), including Lujan's motion to vacate the final judgment of foreclosure, (*see* ECF No. 22 at pp. 15-29). The Defendants' requests for sanctions under Fla. Stat. § 57.105 are **denied.** The parties are further ordered to file a notice with the Court detailing the status of the State Case every 90 days from the date of this order until the State Case is resolved.

The Clerk is instructed to **administratively close** this case. All pending motions are **denied without prejudice**, and may be refiled when this case is reopened.

**Done and ordered**, in chambers in Miami, Florida, October 19, 2018.

Robert N. Scola, Jr.
United States District Judge

United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Elder Lujan, Plaintiff,    ) | |
| ) | |
| v.    ) | Civil Action No. 18-22617-Civ-Scola |
| ) | |
| Samuel R. Danziger, and others,    ) | |
| Defendants.    ) | |

### Order Granting the Defendant's Motion for Reconsideration

This case arises from events occurring in a Florida state court foreclosure proceeding and the ensuing sale of certain real property in Aventura, Florida (the "Subject Property") once legally owned by Plaintiff Elder Lujan ("Lujan"). The Court **grants** the Defendant's motion for reconsideration (**ECF No. 45**) and closes and stays the case pending final resolution of the state court foreclosure action.

The state court foreclosure proceeding has not concluded. Therefore, abstention continues to be warranted under the *Colorado River* doctrine. The Court will **stay** and **administratively close** this case pending final resolution of the state case. The Court continues to require the parties to file a notice with the Court detailing the status of the state case every 90 days, and it further requires the Plaintiff to move to reopen the case within 21 days of final resolution of the state court case.

**Done and ordered** at Miami, Florida on October 28, 2019.

Robert N. Scola, Jr.
United States District Judge